**Robert and Sharon ALBERY,
Plaintiffs-Appellants,**

v.

**Cal REDDIG, both individually and as zoning administrator for the City of Rock Island, et al., Defendants-Appellees.**

**No. 82–3080.**

United States Court of Appeals,
Seventh Circuit.

Argued May 9, 1983.
Decided Oct. 3, 1983.

Kary Love, Moline, Ill., for plaintiffs-appellants.

Dale G. Haake, Katz, McAndrews, Durkee, Balch & Leestein, Rock Island, Ill., for defendants-appellees.

Before PELL and CUDAHY, Circuit Judges, and GIBSON, Senior Circuit Judge.[*]

CUDAHY, Circuit Judge.

Plaintiffs, Robert and Sharon Albery (the "Alberys"), planned to build a two-story garage on their residential lot in Rock Island, Illinois and began construction on it. When it appeared that their garage would be 21 feet high, the Chief Building Inspector and Zoning Enforcement Officer, Cal Reddig ("Reddig"), told them to stop, since the Rock Island Zoning Ordinance restricted garage heights to 15 feet.[1] When their request for a variance from the 21-foot limit was turned down twice by the Rock Island Zoning Board of Appeals, they sued the City of Rock Island (by and through its Mayor) and a variety of Rock Island zoning and planning officials under 42 U.S.C. § 1983 and directly under the Fourteenth Amendment. The district court dismissed the complaint, presumably for failure to state a claim upon which relief could be granted. We affirm.

I

This dispute began when the plaintiffs secured a building permit from the City of Rock Island for a garage measuring 22 feet by 27 feet and having an approximate value (although this is disputed) of $5,000. The plaintiffs apparently filed no plans with the City at the time they secured the permit.[2]

---

[*] The Honorable Floyd R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

[1] Section 8.5a of the Rock Island Zoning Ordinance provides in pertinent part as follows:

Accessory buildings [such as garages] shall not exceed fifteen (15) feet in height.

[2] This statement of facts is compiled from the complaint, the motion to dismiss and affidavits and other documents filed by the parties.

Subsequently, defendant Reddig inspected the garage foundation and footings. According to the plaintiffs, he was told that two holes which were in the center of the excavation were for posts that would support the second floor of the garage. They allege that Reddig told the contractor to dig the holes and the foundation deeper, but no mention was apparently made of the proposed garage height. According to Reddig, on the other hand, plaintiffs told him that the square footage of the building would be 594 square feet—which would not allow for a second floor.

In September, on complaint of a neighbor, Reddig returned to measure the height of the garage, which was then nearly (about 90%) completed. According to Reddig, the building was 21 feet high—which was 6 feet higher than the 15 foot maximum prescribed by the Zoning Ordinance. The square footage of the garage was also much greater than originally indicated because the building had a second floor. Because the edifice exceeded the limits set by section 8.5a of the Zoning Ordinance, Reddig issued a stop order to halt further construction.

The Alberys, represented by counsel, then sought a variance from the Rock Island Zoning Board of Appeals (whose members are also defendants here) to allow the 21-foot garage in the face of the 15-foot limitation. Plaintiffs and their neighbors

presented evidence and arguments at a full and properly noticed hearing, and the variance was denied.

In December the Alberys again petitioned the Zoning Board for a variance; a hearing was held and the petition was denied. In neither hearing did plaintiffs question the interpretation or application of the Zoning Ordinance prescribing the 15-foot height limit. However, the plaintiffs do allege that before the second hearing they requested a copy of the complete Zoning Ordinance from a city official but that they only received it at the time of the hearing and did not have time to read it.

Subsequent to the hearing, plaintiffs discovered section 3.21 of the Zoning Ordinance, which could be interpreted in such a way as to bring their planned garage into compliance with the ordinance.[3] The apparent reason for this was that the Alberys' lot sloped downward to the rear and thus the vertical distance from the front curb grade (which was higher than the building line grade) to the middle height of the highest gable of the Alberys' garage was less than 15 feet. This is the vertical distance prescribed under the Alberys' interpretation of section 3.21. The Alberys, however, have not presented their theory that section 3.21 defines the appropriate mode of measurement to the Zoning Board of Appeals;[4] this court is the first tribunal to consider it.

---

3. Section 3.21 of the Rock Island Zoning Ordinance contains the following definition of height:

> HEIGHT. In the case of a wall, or part of a building, the vertical distance from the average established curb grade in front of the lot or from the average finished grade at the building line, *if higher*, to the ... the middle height of the highest gable or dormer in a pitched or hipped roof.... (emphasis supplied).

Appellants' Brief at App. 4–5.

Plaintiffs assert that § 3.21 is tailor-made for Rock Island conditions (and therefore should take precedence over more generalized methods of measurement). The reason § 3.21 is preferable is that Rock Island has many lots backing up on ravines and therefore sloping downward to the rear. Therefore, if, in accordance with § 3.21, the height of buildings is measured from the front curb grade to the

middle height of the highest gable, uniformity of appearance from the front is achieved when the land on which buildings stand is sloping downward away from the street. *See* Statement of Points and Authorities in Support of Plaintiffs' Resistance to Defendants' Motion to Dismiss, Strike and for Summary Judgment at 7–8.

4. Plaintiffs assert that they are precluded by § 6.4 of the Zoning Ordinance from reapplying to the Zoning Board until one year after their second variance proceeding. *See* Statement of Points and Authorities in Support of Plaintiffs' Resistance to Defendants' Motion to Dismiss, Strike and for Summary Judgment at 9. Section 6.4, as adopted in 1980, precludes the acceptance for public hearing of third zoning requests by the *City Council* that are not "substantially or materially different" from earlier ones. The City Planning Administrator is to

Defendant Reddig's method of measurement, on the other hand, is, according to him, based on, or consistent with, section 409 of the Uniform Building Code (1979) in force in the City of Rock Island.[5] This section apparently prescribes a measurement from the elevation of the *highest adjoining surface within a five foot horizontal distance of the exterior wall of the building* to a point at the average height of the highest gable, Appellees' Brief at 4, or to the highest point of the deck line. Appellees' Brief at 19. Reddig says that he has employed this method (rather than a measurement from the curb elevation) throughout his tenure as building inspector and that it was used by the building inspector before him as well. Reddig also apparently claims that curb elevation measurements under section 3.21 do not apply to an accessory building like a garage. *See* Exhibit 7 to Defendants' Motion for Summary Judgment.

On March 29, 1982, the Alberys filed this action in federal court under 42 U.S.C. § 1983 and directly under the Fourteenth Amendment. They claim, *inter alia,* deprivation of their rights under the Fifth and Fourteenth Amendments, as well as rights reserved to them under the Ninth and Tenth Amendments. The defendants named included the City of Rock Island (by and through the Mayor), the Zoning Board of Appeals for the City of Rock Island, Chief Zoning Inspector Reddig, the Chief of the Planning Department for the City of Rock Island, the Planning Administrator for the City of Rock Island, and the members of the Zoning Board of Appeals. The plaintiffs sought a declaratory judgment, an injunction and damages.

On May 17, 1982, the defendants moved, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim upon which relief might be granted and for summary judgment. The affidavit of Reddig and other documents were attached to the motion for summary judgment. The plaintiffs filed in response the affidavits of Robert Albery, of William Myers, a building contractor, and of Richard Withenbury, an engineering consultant. On November 24, 1982, the district court dismissed the complaint as alleging matters properly left to local authorities and not rising to a constitutional level.

II

The Alberys contend that both their procedural and their substantive due process rights have been violated. We must, of course, accept all the allegations of the complaint as true for purposes of testing the motion to dismiss. But plaintiffs do not deny that they were accorded two hearings before the Zoning Board. Rather they assert that the Zoning Board did not read the Zoning Ordinance as it pertained to measurement of height (that is, section 3.21) in connection with either hearing. The Alberys also allege that the defendants did not "investigate or discuss" the section 3.21 method of measurement. In his affidavit, Robert Albery also claims, as we have noted, that the City failed to provide him with a complete copy of the Zoning Ordinance before the second hearing although he had

decide if the "substantially or materially different" criteria are met, although the City Council may override him. Exhibit 1 to *id.*

**5.** Section 409 of the Uniform Building Code reads in pertinent part as follows:

HEIGHT OF BUILDING is the vertical distance above a reference datum measured to the highest point of the coping of a flat roof or to the deck line of a mansard roof or to the average height of the highest gable of a pitched or hipped roof. The reference datum shall be selected by either of the following, whichever yields a greater height of building:

1. The elevation of the highest adjoining sidewalk or ground surface within a 5-foot horizontal distance of the exterior wall of the building when such sidewalk or ground surface is not more than 10 feet above lowest grade.
2. An elevation 10 feet higher than the lowest grade when the sidewalk or ground surface described in Item 1 above is more than 10 feet above lowest grade.

The height of a stepped or terraced building is the maximum height of any segment of the building.

The Code was apparently adopted in 1979.

explicitly requested it from a city official. He received such a copy only on the day of the hearing. Mr. Albery claims that the failure timely to provide him with the Zoning Ordinance resulted in his being unacquainted with section 3.21 at the hearing. In addition, Zoning Inspector Reddig allegedly did not obtain copies of the plaintiffs' plans before granting the building permit.

■ We would be breaking new ground indeed if we could view these allegations, taken as true, as violations of procedural due process. With respect to the failure of Reddig to obtain plans before issuing a permit, the applicable provision of the Zoning Ordinance requires that:

> Every application for a building permit shall be accompanied by plans in duplicate and plot plan drawn to scale in ink or blue print. . . .

Section 4.1. The legal duty with regard to plans thus seems to be imposed on the applicant for a permit rather than on the official.[6] Apparently Reddig made no demand for the plans. It may have been negligent or improvident of Reddig to issue the permit without receiving and studying the plans, but it is not the stuff of a civil rights violation. Reddig's alleged default was like the negligent loss of a prisoner's hobby kit in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and unlike the "established state procedure" which destroyed a property interest in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982). As in *Parratt,* there were adequate state procedures through which the Alberys could have, and can, seek relief. *See Flower Cab Co. v. Petitte,* 685 F.2d 192, 195 (7th Cir.1982) (on motion for reh'g).[7]

Whether or not in connection with the hearings the members of the Zoning Board read section 3.21 of the Zoning Ordinance, on which the Alberys rely, is immaterial. Apparently the plaintiffs ·themselves at

---

**6.** The complaint alleges that § 4.1 requires that Reddig "obtain and approve copies of plans for any building to be erected prior to issuing a building permit." Complaint at 2–3. As indicated, this allegation seems to be an imaginative gloss upon the language of the Ordinance. In any event, it was at worst negligence for Reddig not to have obtained the plans.

**7.** Errors are virtually inevitable in an administrative scheme such as the Rock Island zoning process. While the negligent acts of a state official administering such a program may deprive an individual of property, the deprivation is not necessarily without due process when the state provides adequate post-deprivation procedures to correct errors. *Parratt v. Taylor,* 451 U.S. 527, 538–43, 101 S.Ct. 1908, 1914–16, 68 L.Ed.2d 420 (1981). *Compare Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436–37, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982) (state procedures inadequate). The complaint here does not allege that existing state procedures are inadequate to remedy the alleged negligence of the local officials. Instead, it asks the federal courts to correct substantive mistakes that may have been made in applying local ordinances in the early stages of the zoning process. The allegedly negligent errors in applying local law do not violate the plaintiffs' due process rights as long as adequate state procedures are available to remedy those errors. The complaint's conclusory allegations of "gross" negligence and "wanton" behavior do not change the analysis of this case.

Here, Reddig's alleged negligence may indeed have resulted in deprivation of some property right of the Alberys. Nonetheless, the Alberys could still appeal the denial of a variance for the garage in state court or, alternatively, present to the Zoning Board their newly discovered measurement of the garage's height under § 3.21 of the Rock Island Zoning Ordinance. Such an approach, which considers the adequacy and availability of remedies under state law before concluding that a deprivation of property violates due process, is particularly suited to local matters like zoning. *See Ellis v. Hamilton,* 669 F.2d 510, 515 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982). In *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 832 n. 9 (1st Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982), the First Circuit noted that while some zoning disputes raise serious due process and equal protection issues,

> . . . the ordinary state administrative proceeding involving land use or zoning does not present such a situation, regardless of how disappointed the license or privilege seeker may feel at being initially turned down. Thus, where—as here—the state has erected a complex statutory scheme and provided for avenues of appeal to the state courts, property is not denied without due process simply because a local planning board rejects a proposed development for erroneous reasons or makes demands which arguably exceed its authority under the relevant state statutes.

that juncture had not read this provision. In any event, the plaintiffs had a full opportunity to be heard at both hearings and never argued the applicability of the section in question. We know of no constitutional basis for requiring that the Board undertake some particular research in connection with a hearing.

In addition, the plaintiffs assert that, in connection with the second hearing, they requested but were not given a copy of the Zoning Ordinance. It goes without saying that such an ordinance is a public document. Since the plaintiffs were represented by counsel and, in any event, are presumed to know the law, the fact that city officials did not respond to their request does not amount to a constitutional violation.

■ The plaintiffs have in effect alleged that Reddig knew or should have known, of their plans to put a second story on the garage. Assuming the most favorable set of facts which might be proven under the complaint, one may suppose for the sake of argument that Reddig should have known that, with its second story, the Alberys' garage would exceed Rock Island's zoning standard. Yet Reddig allowed the garage to proceed almost to completion and then, on complaint, stopped it from being finished. One may assume, *arguendo,* that Reddig was negligent, inattentive or poorly informed in failing to warn the plaintiffs earlier of their impending collision with the Zoning Ordinance. But the Fourteenth Amendment does not provide the remedy for the alleged negligence if adequate state procedures are available. *See Parratt v. Taylor, supra; see supra* note 7. Nor did Reddig act unconstitutionally in halting the garage work when it was brought to his attention. He may have been wrong in ruling that it violated the law—particularly if the applicable law is represented by section 3.21. But his view of the restrictions,

on any reading of the complaint, was not held in bad faith.[8] Nor is it even alleged that Reddig's inspection of the foundations, from which he presumably learned that a two-story garage was contemplated, worked some sort of estoppel against a subsequent stop order.

No doubt the halt in construction was costly to the plaintiffs. But they could have verified the garage dimensions specifically with the Chief Building Inspector before undertaking construction, or they could have checked their interpretation of the height limitation before the time of Reddig's stop order. They may still—they have made no effort yet—persuade the Zoning Board of the correctness of their interpretation, which they have plausibly argued to us.

The only real issue presently in this case is how the height of a garage with a gambrel roof (apparently a sort of gabled roof)[9] should be measured. The plaintiffs may well be entirely correct in their view, based on section 3.21. Indeed, the Withenbury Engineering Consultants determined that the garage was only 14.45 feet high with respect to the elevation of the front curb and 13.62 feet high with respect to the elevation of the building line. Both these modes of measurement seem to reflect the approach of section 3.21. *See* Affidavit of Robert P. Withenbury, attached to Resistance to Defendants' Motion to Dismiss. We modestly acknowledge the versatility of the federal courts and the customary success of their forays into diverse areas of expertise. But we are insufficiently imaginative to conjure up a place in the federal jurisprudence for disputes about the height of garages (and their progeny). In short, the plaintiffs have succeeded in raising no cognizable issues of procedural due process.

### III

■ The plaintiffs also allege that their rights to substantive due process have been

**8.** In his affidavit submitted in opposition to the motion for summary judgment, Robert Albery alleges that Reddig lied during the zoning hearings. We do not understand this alleged conduct to be urged as a due process violation. In any event, we are not inclined to regard these allegations, in themselves, as constitutionally actionable. *Cf. Briscoe v. Lahue,* —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

**9.** *See* Exhibit 3 to Complaint.

violated. To prevail on this theory, plaintiffs must allege and prove that the Zoning Ordinance or the Uniform Building Code (or whatever other legislative enactment may be controlling here) is arbitrary and unreasonable or that its application bears no substantial relation to the public health, safety or morals. *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). But a limitation on residential garage heights is a matter almost classically within the scope of the police power. In addition, this is without any question a matter of peculiarly local concern. Reddig apparently was enforcing a measurement standard for which he finds support in section 409 of the Uniform Building Code, which we have discussed above. The Alberys argue instead for a measurement methodology based on the provisions of section 3.21 of the Rock Island Zoning Ordinance, which we have also discussed. Nothing suggests that either method is so irrational or unrelated to public needs as to implicate the Fourteenth Amendment. And, since neither approach is unreasonable, our role is to leave the decision between them to the authorities in Rock Island and the Illinois courts.

Moreover, the failure of the Board to date to grant the Alberys a variance is not a denial of fundamental fairness—and therefore of due process. The Alberys must be presumed to have acted with knowledge of the applicable zoning laws and restrictions and even with knowledge of the various height measurement methodologies which have been argued here. That the zoning laws may have been administered negligently or without an appropriately sensitive concern for plaintiffs' interests is not a violation of their Fourteenth Amendment rights if state remedies are adequate. *See supra* note 7. The Alberys have been

subjected to an uncertain, and perhaps frustrating, administration of a typically local regulation. But they have not been deprived of a property interest (or even more clearly of a liberty interest) without due process of law.

The idea that constitutional rights are implicated in this quarrel over the zoning rules is not one to which we would like to become accustomed. It is conceivable that a federal lawsuit might arise out of a zoning dispute, *see, e.g., Sixth Camden Corp. v. Township of Evesham,* 420 F.Supp. 709 (D.N.J.1976), but none can be based upon the allegations before us here. Although one can never be certain, we anticipate, based on today's opinion, that the controversy at issue will find its resolution within the city limits of Rock Island through the efforts of Rock Island citizens and officials under Rock Island and Illinois law. That is as it should be.[10]

AFFIRMED.

10. We affirm the district court's dismissal of the complaint, presumably for failure to state a claim upon which relief might be granted. In the alternative, considering all the affidavits and other documents filed by the parties, the district court's action may be affirmed as a summary judgment, there being no genuine issue of material fact as to any issue of constitutional import.