**CITY OF LAS VEGAS, NEVADA, Plaintiff-Appellant,**

v.

**CLARK COUNTY, NEVADA; the State of Nevada; Lewis M. Dodgion; Wendell P. McCurry; John Fransway; Peter Morros; Eleanor Mills; William B. Bentley, M.D.; Tom Ballow; Barry W. Becker; Willie Molini; L.V. "Lody" Smith; the United States Environmental Protection Agency; Frank M. Covington; James R. Thompson; Brown and Caldwell; a California corporation; Jerome B. Gilbert; Lyle Hoag, and John Salo, Defendants-Appellees.**

**No. 84–1567.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1984.

Decided by Order Dec. 11, 1984.

Opinion March 11, 1985.

Joseph V. Karaganis and A. Bruce White, Karaganis, Gail & White, Ltd., Chicago, Ill., George F. Ogilvie, City Atty., Las Vegas, Nev., for plaintiff-appellant.

Victor W. Priebe, Deputy Dist. Atty., Las Vegas, Nev., Peter H. Ferris, Lempres & Wulfsberg, Oakland, Cal., William B. Lazarus, Dept. of Justice, Washington, D.C., George J. Postrozny, Deputy Atty. Gen., Carson City, Nev., for defendants-appellees.

Before WRIGHT, PREGERSON, and POOLE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This case involves a dispute among the city of Las Vegas (City), Clark County (County), and the state of Nevada (State) concerning the proper treatment of the City's sewage. The United States Environmental Protection Agency (EPA) is involved through its administration of the Clean Water Act[1] (CWA), 33 U.S.C. §§ 1251–1376 (1982). The private defendants and state officials became involved through contractual relationships or performance of their official duties.

FACTS

Las Vegas is located in Clark County, approximately 11 miles from Lake Mead. The City discharges treated wastewater into a stream, Las Vegas Wash, which flows approximately 10 miles downstream into Lake Mead.

The City filed suit originally in federal court in 1978 challenging water quality

---

1. The name Clean Water Act generally refers to amendments to the Federal Water Pollution Control Act enacted in 1972. Pub.L. No. 92–500, 86 Stat. 816, codified at 33 U.S.C. §§ 1251–ranco 1376. *See Aminoil U.S.A., Inc. v. California State Water Resources Control Board,* 674 F.2d 1227, 1229 (9th Cir.1982).

standards[2] adopted by the Nevada Department of Conservation and Natural Resources (Department) and derivative effluent limitations set by the Nevada State Environmental Commission (Commission) for Las Vegas' sewage discharge permit. The City also challenged proposed interrelations between the City's effluent discharges and those of the County, particularly concerning joint use of a new facility.

The State, EPA, County and City agreed to the entry of a Consent Decree in the United States district court for the District of Nevada on March 15, 1979. Under the Decree Las Vegas agreed to effluent limitations of (30/30/1)[3] unless and until different limitations were determined to be necessary pursuant to a Water Quality Standards (WQS) study outlined in the Decree. The completed study was to be the basis for state administrative determinations leading to permanent effluent limitations.

The WQS study ended informally and, after considering the data accumulated, the State set water quality standards of 30/30/1 allowing Las Vegas to continue at the level set by the Consent Decree. In December 1982, EPA approved these standards.

Las Vegas then brought the present action challenging the 1 milligram per liter

phosphorus limitation and the 37.5 million gallon per day (mgd) flow limitation the City claimed Nevada intended to impose on the City's treatment facility.[4]

The second amended complaint, the basis for this action, consisted of three counts. Count I named as defendants the County, the State, state officials Dodgion and McCurry (officials), individual members of the Nevada State Environmental Commission (Commissioners), the EPA, EPA employees Covington and Thompson, the engineering firm of Brown and Caldwell (B & C), and B & C officers, Gilbert, Hoag & Salo.

Jurisdiction was alleged under 28 U.S.C. § 1331 (1982), based on the Fifth and Fourteenth Amendments to the United States Constitution, the Consent Decree, and 42 U.S.C. § 1983 (1982). Counts II and III, against B & C and its officers, alleged jurisdiction under 28 U.S.C. § 1331, based on pendent claims grounded in negligence and breach of contract, respectively.

On November 22, 1983, the district court, in an unpublished memorandum decision, dismissed the claims for lack of subject matter jurisdiction. It held, in the alternative, that it would abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87

---

**2.** "A 'water quality standard' is a pollution standard which is based on the resulting quality or condition of the body of water involved [such as Lake Mead] as contrasted with an 'effluent limitation,' compliance with which is measured only by the amount of discharge of a pollutant into the body of water. A water quality standard prescribes the maximum amount of pollutants which should be present in a sample of water from the body of water involved, while an effluent limitation regulates the amount of pollutant which may be legally discharged into the body of water." *Scott v. City of Hammond,* 741 F.2d 992, 994, n. 5 (7th Cir.1984).

**3.** The (30/30/1) represents effluent limitations of 30 mg./liter Biochemical Oxygen Demand (B.O.D.), 30 mg./liter Total Suspended Solids (T.S.S.), and 1 mg./liter phosphorus, on a 30 day average. Only the phosphorus limitation is stricter than minimum technology-based requirements, mandated by 33 U.S.C. § 1311(b) and 40 C.F.R. § 133 (1984), and is the only disputed limitation.

**4.** Actual effluent and flow limitations are imposed through the issuance of a discharge permit, Nev.Rev.Stat. § 445.221 (1981), which must include effluent limitations sufficiently stringent to "effectuate water quality standards." Nev.Rev.Stat. § 445.231(1) (1981). A permit applicant is entitled to a pre-permit departmental decision, Nev.Rev.Stat. § 445.267 (1981), followed by a de novo hearing before the State Environmental Commission, Nev.Rev.Stat. § 445.274 (1981). This decision satisfies the contested case definition in Nev.Rev.Stat. § 233B.032 (1983), and judicial review is available in Nevada state court under Nev.Rev.Stat. § 233B.130 (1981).

The City can bring a declaratory judgment action challenging the water quality standard in state court prior to the permit process, providing it first asks the agency to pass on the validity of the regulation in question. Nev.Rev.Stat. § 233B.110 (1981).

L.Ed.2d 1424 (1943), if it had jurisdiction. The City appealed.

On December 11, 1984, we affirmed the district court by order and write now to explain our reasoning.

The City on appeal additionally alleges jurisdiction under 33 U.S.C. § 1365 (1982), and 28 U.S.C. § 1361 (1982), as well as asserting additional grounds for jurisdiction under 28 U.S.C. § 1331.

## ANALYSIS

### I. *Standard of Review*

■ We review *de novo* a dismissal for lack of subject matter jurisdiction. *Hoohuli v. Ariyoshi,* 741 F.2d 1169, 1173 (9th Cir.1984).

■ Under 28 U.S.C. § 1331, a "federal question is jurisdictionally insubstantial if it is patently without merit, or so insubstantial, improbable, or foreclosed by Supreme Court precedent as not to involve a federal controversy." *Demarest v. United States,* 718 F.2d 964, 966 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984). If the claim is not "wholly insubstantial and frivolous," the court should assume jurisdiction to determine whether the complaint states a cause of action on which relief could be granted. *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union,* 457 U.S. 15, 21 n. 6, 102 S.Ct. 2202, 2206 n. 6, 72 L.Ed.2d 639 (1982).

■ We may affirm the district court "on any basis fairly supported by the record." *Hoohuli,* 741 F.2d at 1177. A complaint may be dismissed if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts that could be proved." *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 649 (9th Cir.1984) (quoting *Halet v. Wend Investment Co.,* 672 F.2d 1305, 1309 (9th Cir.1982)). "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

### II. *Jurisdiction to Enforce the Consent Decree*

■ "A consent decree is a judgment" which has res judicata effect and "may be enforced by judicial sanctions." *SEC v. Randolph,* 736 F.2d 525, 528 (9th Cir.1984). The district court retains jurisdiction to enforce its judgments. *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1524 (9th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984). If the complaint properly alleged violation of the Consent Decree, the district court had jurisdiction.

### A. *Is This a Claim to Enforce the Decree?*

#### 1. *Effluent Limitations*

The parties to the Consent Decree agreed to form a Water Quality Study Board to conduct the WQS study. The study was to follow a four-step process modeled after the CWA § 303, 33 U.S.C. § 1313. The steps were: (1) specify desired beneficial uses for Lake Mead and the Las Vegas Wash; (2) identify water quality criteria necessary to achieve and maintain the selected beneficial uses; (3) develop total maximum daily loads (TMDL's) of substances that will cause violations of the selected water quality criteria; and (4) allocate the daily load to respective point sources of the pollutant.

The resultant waste load allocation would be the basis "for the establishment, *if necessary,* of effluent limitations different from those set forth in paragraph 6 above." Consent Decree ¶ 18(f) (emphasis added). The state was then to make "administrative determinations ... based on the WQS study." Consent Decree ¶ 25.

Paragraph six of the Consent Decree established an interim effluent limit of "1 milligram per liter phosphorus ... on a 30-day average," effective "unless and until different effluent limitations are established pursuant to the [WQS study] and

administrative determinations referred to in paragraphs 25, 26 and 27." This effluent limitation was to continue in effect if the WQS study and administrative determinations concluded that "different" effluent limitations were not "necessary." Consent Decree ¶ 26.

We assume for purposes of this appeal that neither the WQS study nor the State made all the findings mandated by the Decree. The Nevada Environmental Commission ultimately adopted 30/30/1 as the water quality standard for Lake Mead and the Las Vegas Wash.

Las Vegas claims injury via the defendants' failure to follow the procedures outlined in the Consent Decree and thereby to set less stringent effluent limitations. Whether this injury is traceable to a breach of the Decree depends on a construction of it.

■ We reach the issue whether the City's complaint "states a cause of action on which relief could be granted," *Bell v. Hood*, 327 U.S. at 682, 66 S.Ct. at 776, *see* Fed.R.Civ.P. 12(b)(6), because we cannot say that the claim under the Consent Decree is wholly insubstantial.

■ A consent decree, which has attributes of a contract and a judicial act, is construed with reference to ordinary contract principles. *Washington v. Penwell*, 700 F.2d 570, 573 (9th Cir.1983). Its scope "must be discerned within its four corners", but "a court may consider surrounding circumstances as aids in construing the consent decree." *Kittitas Reclamation District v. Sunnyside Valley Irrigation District*, 626 F.2d 95, 98 (9th Cir.1980), *cert. denied*, 449 U.S. 1079, 101 S.Ct. 861, 66 L.Ed.2d 802 (1981). This decree should be construed against a backdrop of the CWA, since Las Vegas originally brought the action to enforce that statute. *See United States v. Motor Vehicle Manufacturers Ass'n*, 643 F.2d 644, 652 (9th Cir. 1981).

■ On its face, the Consent Decree guaranteed only that Nevada would not set effluent limitations more stringent than 30/30/1 without following the step-by-step procedures. The purpose of the WQS study and the related administrative determinations was to determine if "different" effluent limitations were "necessary to protect [the] desired beneficial uses of Lake Mead and the Las Vegas Wash." Consent Decree ¶ 18. Different limitations would be "necessary" only if the interim limitations were too lenient to protect the desired beneficial uses.

The Consent Decree provides no guarantee against the State promulgating effluent limitations that are not more stringent.

Paragraph 26 of the Consent Decree provides that:

> If the WQS Study and administrative determinations of paragraph 25 do not conclude that effluent limitations different from those required by paragraph 6 [30/30/1] above are necessary, then the effluent discharged by the Cities and the County may continue at that level necessary to meet the requirements of paragraph 6 above.

Las Vegas can claim no redressable injury from the state's failure to follow the procedural steps outlined in the Consent Decree because the State has not promulgated effluent limitations more stringent than 30/30/1.

The City has received the benefit of the Decree. Assuming the WQS study failed to make the requisite findings, the State is precluded from imposing stricter limits.[5] Our interpretation finds support in the circumstances surrounding the entry of the Decree. The State sought to impose effluent limits of 10/2/.5 on the City's treatment plant. The City objected, urging that conditions did not require such strict limits. The Consent Decree was a compromise.

### 2. Flow Limit Claim

■ The City argues that the Consent Decree prohibits the State from imposing

---

5. We do not reach the issue, urged by the defendants, whether the Consent Decree remains in effect, since the City does not allege the State has imposed stricter limits. For purposes of this appeal, we assume it still is in effect.

any flow limits on the City's effluent discharge. We find this claim meritless.

The Decree, in paragraph 5, was careful to limit expansion of the City and County treatment plants to a total of 99 mdg. The City mistakenly relies on language contained in paragraphs 15 and 33, providing that if the parties disagree on the results of Treatment Facilities Studies, Phases I and III respectively, the City and County were free to treat their own sewage. Both studies were explicitly directed toward determining the "most cost effective treatment ... for the 99 [mgd] projected total flow as described in paragraph 5 above." Consent Decree ¶¶ 10 (Phase II), 30 (Phase III). The only logical construction is that the City need not adopt the treatment procedure recommended by the study and may treat its own sewage up to the limits of paragraph five. The City has not alleged that it has been prevented from discharging the amount allowed under this limit.

### III. Clean Water Act Claims

#### A. Jurisdiction

■■■ The Supreme Court in *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 21, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1981), concluded that Congress intended to limit access to federal court to enforce the CWA to the express enforcement provisions of the Act. This precludes suits brought under 28 U.S.C. § 1331 and 42 U.S.C. § 1983. Las Vegas is limited to a cause of action brought under, and conforming to the requirements of, CWA § 505, 33 U.S.C. § 1365. Additional grounds for jurisdiction are lacking regardless of whether the City's complaint falls within the purview of CWA § 505, 33 U.S.C. § 1365. *Allegheny County Sanitary Authority v. EPA*, 732 F.2d 1167, 1174–76 (3d Cir.1984).

#### B. Non-Federal Defendants

Section 505(a)(1) provides a cause of action against any person or state (subject to the State's Eleventh Amendment defense), who is "alleged to be in violation of ... an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1). Section 505(f), 33 U.S.C. § 1365(f), defines "effluent standard or limitation" for the purposes of this section. *See EPA v. State Water Resources Control Board*, 426 U.S. 200, 222, 96 S.Ct. 2022, 2032, 48 L.Ed.2d 578 (1976).

■■■ The defendants are not dischargers and cannot be in violation of an "effluent standard or limitation." Section 505(a)(1) provides a cause of action only against one discharging excess pollutants into a waterway. Since the City's action does not fall within CWA § 505(a)(1), 33 U.S.C. § 1365(a)(1), the CWA claims against all defendants, but the EPA, were properly dismissed for lack of jurisdiction.

#### C. Federal Defendants

The City on appeal also alleges jurisdiction under CWA § 505(a)(2), 33 U.S.C. § 1365(a)(2), over its complaint against EPA for failure to perform non-discretionary duties under § 303(d), 33 U.S.C. § 1313(d). This apparently refers to the EPA's failure to promulgate TMDL's upon the State's failure to do so.

The City argues as follows. Nevada was required by CWA § 303(d)(1)(A), 33 U.S.C. § 1313(d)(1)(A), to identify waters for which the minimum effluent limitations imposed by the CWA (30/30) are not stringent enough to implement applicable water quality standards. The State, under CWA § 303(d)(1)(C), 33 U.S.C. § 1313(d)(1)(C), was obligated to calculate TMDL's for these waters and submit them to the EPA pursuant to CWA § 303(d)(1)(D)(2), 33 U.S.C. § 1313(d)(1)(D)(2). The EPA must then approve the submission or disapprove and promulgate TMDL's. *Id. See Scott*, 741 F.2d at 997. The *Scott* court interpreted the state's refusal to submit TMDL's as a "constructive submission" that no TMDL is necessary, which created a non-discretionary duty on the part of the EPA to "establish TMDL's when the states have defaulted by refusal to act over a long period." *Id.* at 998.

 Unlike the plaintiff in *Scott,* the City does not allege that Lake Mead and the Las Vegas Wash are not sufficiently protected by the State's effluent limitations (30/30/1). It has alleged no redressable injury resulting from the EPA's failure to act. Even if the EPA promulgated TMDL's, it has no authority to compel the State to adopt the least restrictive standard. *Aminoil,* 674 F.2d at 1230 ("[R]ole envisioned for the states [by CWA] encompasses ... right to enact discharge limitations which are more stringent than the federal standards....") *Accord Commonwealth Edison Co. v. Train,* 649 F.2d 481, 486–87 (7th Cir.1980).

 The City's real quarrel is with the content of the State water quality standard, which is not the proper subject of a suit under CWA § 505(a)(2), 33 U.S.C. § 1365(a)(2). *Scott,* 741 F.2d at 995 (approval of content of water quality standards involves at least some discretion). This claim was properly dismissed for lack of jurisdiction.

## IV. *Jurisdiction for Review Under the APA*

It is within the discretion and expertise of the EPA, under the CWA, to determine first whether a state has properly promulgated water quality standards. *See* 33 U.S.C. § 1313(a).

 If properly pleaded, the district court may have had jurisdiction under 28 U.S.C. § 1331(a) to review the EPA's approval of Nevada's water quality standards,[6] under the Administrative Procedure Act (APA), 5 U.S.C. § 704. *See Scott,* 741 F.2d at 995. We do not reach this issue because the complaint neither mentions the APA nor points to a particular agency action or administrative record for the court to review, and is "insufficient to state a claim for judicial review of agency action." *Id.*

## V. *Due Process Claims*

### A. *Generally*

The City asserts that the State, in concert with the other defendants, violated the City's due process rights by promulgating effluent limitations more stringent than required by the CWA without following procedural requirements outlined in CWA § 303, 33 U.S.C. § 1313. The City's claim, that the effluent limitation is without basis in fact and logic, amounts to a substantive due process claim. *See Kindem v. City of Alameda,* 502 F.Supp. 1108, 1113 (N.D.Cal. 1980).

 The State's action here neither "infringe[s] a fundamental interest" nor "discriminate[s] against a suspect class." *J.W. v. City of Tacoma,* 720 F.2d 1126, 1128 (9th Cir.1983). To survive scrutiny under due process analysis, the effluent limitation need only bear "[a] rational relation to a legitimate government interest" to survive. *Beller v. Middendorf,* 632 F.2d 788, 808 (9th Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981); *accord Albery v. Reddig,* 718 F.2d 245, 251 (7th Cir.1983) (city zoning ordinance valid unless "arbitrary and unreasonable or that its application bears no substantial relation to the public health, safety or morals").

 We find the effluent limitations reasonably related to the important state interest in cleaner water.[7] Nevada state courts are the proper forum for any complaint the City has concerning the content of the effluent limitations.[8] *Cf. Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 829–30 (1st Cir.) (denial of building permit not due process violation where extensive state review procedures were available), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982).

---

**6.** A properly pleaded action for review of the EPA's approval of Nevada's water quality standards is the proper federal proceeding for the City's complaint that the State confused water quality standards and effluent limitations under the CWA.

**7.** The purpose of the Clean Water Act was to "eliminate pollutant discharges into the navigable waters of the United States by 1985." *Aminoil,* 674 F.2d at 1229. We decline to find Nevada's step toward this goal violative of due process.

**8.** *See* note 3, *supra.*

## VI. *Pendent Claims*

█ Counts II and III assert pendent claims against Brown and Caldwell (B & C) and certain of its officers, grounded in negligence and breach of contract. These claims were properly dismissed since the federal claims were dismissed before trial. *Jones v. Community Redevelopment Agency,* 733 F.2d 646, 651 (9th Cir.1984).

## VII. *Conclusion*

We have considered the other jurisdictional grounds urged on appeal by the City. We find them without merit.

We affirm the district court's dismissal of the claims brought under the due process clause of the Fifth and Fourteenth Amendments, the CWA and 42 U.S.C. § 1983, for lack of jurisdiction.

We affirm dismissal of the claim brought under the Consent Decree on the alternative ground that the City's complaint fails to state a claim upon which relief can be granted.

We do not reach the issue whether the district court properly abstained under *Burford.*

AFFIRMED.