33 F.3d 59
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Stephanie SCHNEIDER; Stephanie Schneider, Guardian ad Litem
for minors Jaime Schneider, Scott Schneider &
Jeremy Schneider, Plaintiffs-Appellants,
and
Christopher Marshall; Justin Deckard, Plaintiffs,
v.
SAN BERNARDINO COUNTY; Floyd Tidwell, Sheriff, personally
and as Sheriff of the County of San Bernardino;
John W. Finck as Marshal and personally;
Walter Innenberg,
Defendants-Appellees.
Jack MARSHALL, Plaintiff-Appellant,
v.
SAN BERNARDINO COUNTY; Floyd Tidwell, Sheriff, as Sheriff
and personally; John W. Finck as Marshal and Personally;
Thirty-Two Unknown Named Deputy Sheriffs and Marshals of the
County of San Bernardino; Four Unknown Named Employees of
the Department of Mental Health of the County of San
Bernardino; Walter Innenberg, Defendants-Appellees.
 Nos. 92-55991, 92-55994.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1994.
Decided Aug. 15, 1994.
 
 Before: TANG, PREGERSON, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jack Marshall and Jaime, Scott and Jeremy Schneider (collectively the "appellants") appeal the district court's orders granting the defendants' motions for summary judgment.[1] All of the appellants make the following arguments: (1) that the district court erred in failing to address their substantive due process claims; (2) that the district court erred in finding procedurally sufficient the March 14, 1989 notice to vacate; (3) that the district court erred in finding that they lacked standing to attack a violation of the automatic stay imposed pursuant to Paula Marshall's second personal petition for bankruptcy; and (4) that the district court erred in finding that Walter Innenberg was not liable for his participation in the search of the appellants' possessions. Marshall also argues that the district court abused its discretion in not allowing him to withdraw or amend his admissions under Rule 36 of the Federal Rules of Civil Procedure and that the district court erred in finding that there was no evidence of the use of excessive force. The Schneiders also argue that the district court abused its discretion in denying their motion to reopen discovery. We affirm.
 
 BACKGROUND
 
 3
 Paula Marshall's home, which she occupied with her husband Jack Marshall, her daughter Stephanie Schneider, Stephanie's minor children, Jaime, Scott and Jeremy Schneider, her son Christopher Marshall, and Stephanie's boyfriend Justin Deckard, was sold at a foreclosure sale to James Martin ("Martin"). Immediately following the sale, Martin served a three day notice to quit or pay rent. When the occupants refused to quit or pay rent, Martin initiated eviction proceedings.
 
 
 4
 On March 14, 1989, a San Bernardino County marshal served the occupants with a writ of possession and a notice to vacate. According to the notice, the occupants were to vacate the premises by March 20, 1989 or be forcibly evicted. To prevent their impending eviction, the occupants filed various actions including multiple and successive petitions for bankruptcy, a claim of possession action and a declaratory relief action seeking to set aside the sale of the home to Martin. A temporary stay of eviction was granted with each new action filed.
 
 
 5
 In July of 1989, when all of the temporary stays of eviction had either expired or been removed, Martin sought to have the occupants forcibly evicted under the authority of the March 14th notice. Upon learning of the occupants' history of filing actions to avoid eviction, the San Bernardino County marshals office agreed to perform the eviction without the occupants being served again with a new notice. While the usual procedure was to serve a new notice after a temporary stay of eviction had expired or been removed, this procedure was for the purpose of officer safety only and not a legal requirement.
 
 
 6
 The eviction was to be performed by a single San Bernardino County deputy marshal accompanied by Martin's attorney, Walter Innenberg ("Innenberg"). However, when one of the occupants, Jack Marshall, refused to leave and barricaded himself in his bedroom with a .22 calibre rifle, reinforcements were requested from the marshal's office and the sheriff's office. After a six hour standoff, Jack Marshall was persuaded to leave his bedroom and was arrested.
 
 
 7
 After Jack Marshall's arrest, Paula Marshall was brought back into the home for questioning. She alleges that during the questioning she saw Innenberg, who was a reserve deputy sheriff, wearing a deputy sheriff's badge, bullet proof vest, gun and holster. She also alleges that she heard the deputy sheriffs, the deputy marshals and Innenberg searching through the personal possessions of some of the occupants.
 
 
 8
 The occupants filed actions in federal district court alleging various constitutional violations and requesting relief under 42 U.S.C. Sec. 1983. Schneider v. County of San Bernardino was filed by Stephanie Schneider, on her own and on behalf of her minor children, Jaime, Scott and Jeremy Schneider, Christopher Marshall, and Justin Deckard. The claims of the adult plaintiffs were dismissed, however, because they were not filed within the time periods of the relevant statute of limitations, leaving only Jaime, Scott and Jeremy Schneider as plaintiffs. Marshall v. County of San Bernardino was filed by Jack and Paula Marshall. Paula Marshall voluntarily dismissed her claims. The district court granted the defendants' motion for summary judgment in each case.
 
 DISCUSSION
 I. Sufficiency of Notice[2]
 
 9
 The appellants argue that they should have been served with a new notice to vacate before they were evicted on July 10, 1989 because the notice served on March 14, 1989 had become stale. They argue that the failure to serve a new notice violated their due process rights. We disagree.
 
 
 10
 "For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right, they must first be notified." Fuentes, 407 U.S. at 80 (quotation marks and citations omitted). Additionally, the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." Id. (quotation marks and citations omitted). The purpose of this requirement is twofold: "to ensure abstract fair play," and to protect an individual's "use and possession of property from arbitrary encroachment--to minimize substantively unfair or mistaken deprivations of property...." Id. at 81.
 
 
 11
 Paula Marshall was a party to and participated in the proceedings leading to her eviction and that of the other occupants. She admittedly abused the bankruptcy process to give an extra four months to her and the other occupants to litigate their claims. Paula Marshall used this time to file a declaratory relief action seeking to set aside the sale of the home to Martin. The time was also used by Stephanie Schneider to file a claim of possession. There is no legal requirement to serve a new notice. Clearly, all of the appellants were aware of the eviction proceedings and all have had a sufficient opportunity to have their claims heard. We find therefore that the failure to serve a new notice to vacate did not violate the appellants' due process rights.
 
 II. The Automatic Bankruptcy Stay
 
 12
 The appellants argue that the district court erred in finding that they lack standing to attack a violation of the automatic stay imposed pursuant to 11 U.S.C. Sec. 362 in accordance with Paula Marshall's second personal petition for bankruptcy. They argue that they have standing because they are "family members of a Chapter 13 debtor who have a possessory interest in the family home through rights conferred by the debtor." We disagree.
 
 
 13
 Section 362 provides, in relevant part, that:
 
 
 14
 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title ... operates as a stay, applicable to all entities, of--
 
 
 15
 (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.
 
 
 16
 11 U.S.C. Sec. 362(a)(3). This provision is intended to benefit the debtor estate. Tilley v. Vucurevich ( In re Pecan Groves of Arizona ), 951 F.2d 242, 245 (9th Cir.1991). Section 362 does not confer any rights to outside parties. Magnoni v. Globe Inv. and Loan Co. Inc. ( In re Globe Inv. and Loan Co. Inc.), 867 F.2d 556, 560 (9th Cir.1989).
 
 
 17
 The appellants argue that their case can be distinguished because it deals with a Chapter 13 bankruptcy rather than a Chapter 7 bankruptcy. They cite 11 U.S.C. Sec. 1301, which provides for an automatic stay of action against a codebtor in Chapter 13 cases. They then cite Sec. 1301's legislative history for the proposition that it was designed to protect a debtor by insulating him or her from the indirect pressures from his or her creditors exerted through friends or relatives that may have co-signed an obligation of the debtor. See H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 426 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6381. From this, the appellants reason that Congress extended the scope of the automatic stay in Chapter 13 cases to protect family members, and therefore, family members should have standing to attack a violation of an automatic stay.
 
 
 18
 The appellants' argument is unpersuasive. Family member standing in bankruptcy proceedings does not follow from the fact that Congress insulated debtors from the indirect pressures of creditors exerted through friends or relatives that may have co-signed an obligation of the debtor. The appellants do not show what purpose would be served by allowing a debtor's family members to challenge violations of an automatic stay in the debtor's bankruptcy proceedings. It would appear that a debtor's interest in his own possessions would be sufficient to protect that of family members. We therefore agree with the district court that the appellants lack standing to attack a violation of the automatic stay imposed pursuant to Sec. 362 in accordance with Paula Marshall's second personal petition for bankruptcy.
 
 
 19
 III. Innenberg's Liability for the Search of the Appellants' Personal Possessions
 
 
 20
 There is no evidence in the record that Innenberg searched any of the appellants' possessions. The appellants argue, however, that the district court was required to infer that he searched their possessions because there is evidence of a general search of the home. This argument is unpersuasive--evidence of a general search is not evidence that the appellants' possessions were searched.
 
 
 21
 The district court granted the County of San Bernardino's motion for summary judgment based on the appellants' failure to produce any evidence that their "personal belongings or property were searched." We find this reasoning sufficient to affirm the district court's grant of summary judgment as to Innenberg's liability for the search. See City of Las Vegas v. Clark County, 755 F.2d 697, 701 (9th Cir.1985) (holding that the district court may be affirmed on any basis fairly supported by the record).[3]
 
 IV. Rule 36 Admissions
 
 22
 Marshall argues that the district court abused its discretion in denying him leave to withdraw or amend admission number 11, which states that he "was not deprived of any Federally protected rights as a proximate result of any official policy or custom of the County of San Bernardino."[4] We disagree.
 
 
 23
 Rule 36(a) of the Federal Rules of Civil Procedure provides that a matter is deemed admitted unless, "within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, [and] signed by the party or the party's attorney...." Any matter admitted in response to a request for admission is conclusively established unless the court permits withdrawal or amendment of the admission. Fed.R.Civ.P. 36(b); accord 999 v. C.I.T. Corp., 776 F.2d 866, 869 (9th Cir.1985). The court may permit withdrawal or amendment of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Fed.R.Civ.P. 36(b); 999, at 869.
 
 
 24
 The Marshall defendants requested admissions pursuant to Rule 36. Marshall's response was insufficient and the admissions were deemed admitted. When dismissing Marshall's Fourth Amendment claims for unlawful arrest and confinement without probable cause, the district court relied on the following admissions:
 
 
 25
 (1) [that] defendant Innenberg was not acting within the course and scope of his employment with the defendant county when he participated in [Marshall's] eviction on July 10, 1989; (2) [that] Marshall barricaded himself inside his house and threatened to kill deputy Weinberg if he attempted to evict [him]; and (3) [that] the County sheriff's deputies had probable cause to arrest [Marshall] pursuant to California Welfare & Institutions Code Sec. 5150.
 
 
 26
 These were the only admissions on which the district court relied to grant the defendants' motion for summary judgment.
 
 
 27
 Although Marshall argues that admission number 11 went to the very heart of his case, none of the admissions on which the district court relied concerned admission number 11. As such, allowing Marshall to withdraw or amend admission number 11 would not have affected the district court's grant of summary judgment. Under these circumstances, we find that the presentation of the merits of the action would not have been "subserved" by permitting withdrawal or amendment of admission number 11. The district court did not abuse its discretion in denying Marshall's motion.
 
 V. Excessive Force
 
 28
 Marshall argues that Innenberg and the deputy marshal who initially attempted to evict the occupants used excessive force by entering the home with their guns drawn.[5] We disagree.
 
 
 29
 A person who claims excessive force was directed at him or her can only raise a Fourth Amendment claim. Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir.1991), cert. denied, 113 S.Ct. 460. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (quotation marks and citations omitted). Because the "test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, ... its proper application requires careful attention to the facts and circumstances of each particular case...." Id. (quotation marks and citations omitted). The reasonableness of a particular use of force is judged from the perspective of a reasonable officer. Id.
 
 
 30
 Innenberg and the deputy marshal were about to forcibly evict occupants who had gone to extraordinary lengths to prevent the eviction. Those who perform forced evictions can become involved in very dangerous situations as evidenced here by Jack Marshall's refusal to leave the premises and the resultant armed standoff. There is no evidence that the entry with guns drawn caused any occupant to suffer harm. Accordingly, we agree with the district court that the fact that Innenberg and the deputy marshal entered the home with their guns drawn, without more, was reasonable as a matter of law. The appellants' excessive force claims were properly dismissed.
 
 VI. Motion to Reopen Discovery
 
 31
 The Schneiders argue that the district court abused its discretion in denying their motion to reopen discovery because their attorney, Alan Rosenberg ("Rosenberg"), who withdrew from the case because of illness, did not conduct adequate discovery. We disagree.
 
 
 32
 The record supports the district court's reasons for denying the Schneiders' motion to reopen discovery: The district court correctly points out that any discovery produced in the Marshall case, which involved the same defendants and essentially the same issues as in the Schneider case, could be used in the Schneider case. The record indicates that Rosenberg relied extensively on the assistance of Paul Marchand ("Marchand") in both the Marshall and Schneider cases.[6] Rosenberg's motion to withdraw was granted more than a month before the end of discovery, during which time discovery could have been conducted "without the alleged hindrance of an ill counsel."
 
 
 33
 Furthermore, the record does not indicate that Rosenberg's illness prevented him from conducting adequate discovery in the Schneider case. By his own admission, Rosenberg was not ill when the Schneider complaint was filed or for several months afterward. Moreover, neither Rosenberg's nor Marchand's declaration indicate that Rosenberg's illness prevented him from effectively representing the Schneiders before he moved to withdraw as their counsel in December of 1991.
 
 
 34
 Finally, while the Schneiders' new attorney may have believed that additional discovery was necessary, he does not explain what he hoped to discover that would have precluded summary judgment. The district court obviously felt that the discovery already conducted was adequate, and we cannot say that the district court abused its discretion in denying the Schneiders' motion to reopen discovery.
 
 
 35
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Marshall and the Schneiders named as defendants the County of San Bernardino, Sheriff Floyd Tidwell, Marshal John Finck, and Walter Innenberg. Marshall also named as defendants thirty-two unknown named deputy sheriffs and deputy marshals of the County of San Bernardino and four unknown named employees of the department of mental health of the County of San Bernardino
 
 
 [2]
 The appellants argue that the district court erred by not ever ruling on their substantive due process claims. The claims referred to as substantive due process claims by the appellants, however, all concern the sufficiency of the notice to vacate. Claims challenging the sufficiency of notice are procedural due process claims, not substantive due process claims, and the district court correctly treated them as such. See Fuentes v. Shevin, 407 U.S. 67, 80 (1972) (concluding that notice is the central meaning of procedural due process); Zinermon v. Burch, 494 U.S. 113, 125 (1990) (holding that a substantive due process claim refers to certain actions in which the government may not engage no matter how many procedural safeguards it employs, while a procedural due process claim refers to the deprivation by state action of a constitutionally protected interest in life, liberty or property without due process of law)
 
 
 [3]
 Because our decision as to Innenberg's liability is based on the fact that there is no evidence that Innenberg searched any of the appellants' possessions, we need not address whether Innenberg acted under color of state law
 
 
 [4]
 In his opening brief, Marshall concedes that the other admissions deemed admitted are no longer important to his case
 
 
 [5]
 Though there is conflicting evidence over whether Innenberg and the deputy marshal actually entered the home with their guns drawn, that fact is assumed for purposes of this disposition
 
 
 [6]
 The Schneiders argue that Marchand never appeared in their case or signed any pleadings. Our review of the record, however, reveals that Rosenberg entrusted preparation for the joint status conference to Marchand, that Marchand made "a special appearance" when he participated in the preparation of the status conference brief, and that Marchand signed the status conference brief as a "co-counsel."