**Sandra F. DAWSON, Plaintiff,**

v.

**CITY OF KENT, et al., Defendants.**

**No. C87–104–A.**

United States District Court,
N.D. Ohio, E.D.

March 28, 1988.

L. James Martin, Stow, Ohio, for plaintiff.

Bruce S. Rutsky, Mark B. Marein, Leo R. Ward, Cleveland, Ohio, for defendants.

### ORDER

BELL, District Judge.

Plaintiff filed this action against defendants City of Kent (City) and one of its officials, Ronald Craig, seeking redress under 42 U.S.C. § 1983. Plaintiff's claim of deprivation of her fourth amendment rights was dismissed by summary judgment entered for defendant on January 25, 1988. Leave was granted for filing a further motion for summary judgment on the issue of whether plaintiff's fourteenth amendment due process rights were violated. That motion as well as plaintiff's response is now before the court.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that as a matter of law, it is entitled to summary judgment. In reviewing a motion for summary judgment, a court must consider the pleadings, related documents and evidence and all reasonable inferences in a manner most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Smith v. Hudson*, 600

F.2d 60 (6th Cir.1979); *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Board of Ed. Cincinnati v. Department of H.E.W.*, 532 F.2d 1070 (6th Cir.1976). The inquiry dictated at this stage asks whether a trial is required to resolve genuine factual issues. "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, 212 (1986) (citations omitted).

To establish a claim under section 1983, there are two jurisdictional prerequisites. First, plaintiff must have been deprived of rights, privileges or immunities secured by the Constitution and laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Second, it must be alleged that the defendants were acting under color of law when they committed these constitutional deprivations. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

As indicated, the defendants are a city and an officer employed by that city. Plaintiff complains, in part, that the officer committed certain acts which resulted in plaintiff's being deprived of constitutional protections. It is clear that the acts complained of were acts done in Detective Craig's official capacity. Thus, it can be said that the defendants were acting generally under color of law for purposes of section 1983 analysis. But the basis of plaintiff's motion for summary judgment is that plaintiff was not deprived of any right, privilege or immunity guaranteed by the Constitution. To test the validity of this contention we turn to the evidence relating to plaintiff's claim.

Defendant's have attached the deposition of Alex Stall, plaintiff's employer, to their motion. Plaintiff's counsel attached his own affidavit to her responsive brief. Defendants have moved to strike that affidavit on the basis that it is entirely hearsay and inadmissible as evidence for the purpose of the motion pursuant to Federal Rule of Civil Procedure 56(e). The federal rules make only one reference to a motion to strike in Rule 12(f). This rule relates only to pleadings and is inapplicable to other filings. The court will thus not strike the affidavit but will consider it as a matter of evidence.

> Rule 56(e) provides, in pertinent part: Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

The affidavit in question is the statement of plaintiff's counsel, L. James Martin. He states that he was informed by a deputy clerk of Kent Municipal Court, Norma Appolonia, of certain facts relavant to this lawsuit. "Hearsay" is "a statement ... offered in evidence to prove the truth of the matter asserted." Federal Rule of Evidence 801(c). Hearsay is not admissible evidence unless it can be included as an exception under Federal Rules of Evidence 803 or 804. There is no indication that the declarant, Norma Appolonia, is unavailable to provide the testimony. Therefore, the exceptions provided by Rule 804 are not applicable. There are twenty-four exceptions provided by Rule 803 but none that could be the vehicle for Ms. Appolonia's hearsay testimony. There appears to be no possible conclusion other than that her testimony is being offered for the truth of the matters asserted. Therefore, it is inadmissible hearsay. Furthermore, the evidence of the city policies sought to be admitted does not impact upon the resolution of this case as discussed below.

The facts before this court are drawn from the deposition of Alex Stall and the record evidence previously submitted.

They begin in 1983 when plaintiff became a resident of Summit Gardens, a government subsidized housing project located in Portage County, Ohio. At that time and until February 26, 1986, plaintiff was employed by the Ohio Edison Company as an information specialist. Affidavit of Sandra Faye Dawson at ¶ 2; Deposition of Alex Stall (Stall Deposition) at 5.

An investigation of improper rent subsidies at Summit Gardens was undertaken at some point by Portage Metropolitan Housing Authority (PMHA) investigators. Alex Stall, district manager of Kent office where plaintiff was employed, was called by defendant Detective Craig of the Kent City Police on February 13, 1986. Detective Craig asked where he could serve a subpoena for plaintiff's records, wages and salary figures. Stall Deposition at 6–7. Alex Stall related this inquiry to his supervisor and learned that PMHA had made a confidential inquiry by letter dated October 10, 1985, seeking verification of plaintiff's income. *Id.* at 9; Stall Deposition Exhibit A. The focus of this inquiry was on two letters submitted by plaintiff as verification of her income which appeared to be signed by two Ohio Edison employees. Stall Deposition Exhibit A. PMHA advised that they had reason to believe the letters were fraudulent. *Id.* and attachments.

Mr. Stall was not advised of this inquiry at the time it was received by his supervisor in October. It was not until after Detective Craig's call about serving the subpoena that he was informed of the earlier inquiry and ongoing investigation into the matter by Ohio Edison. Stall Deposition at 11–13. Ohio Edison's concern at that point was whether plaintiff had forged the names of her supervisors, Mike Nagy and Carol Bahr, on the income verification letters submitted to PMHA. *Id.* at 13–14. Mr. Stall spoke to Mike Nagy that evening and was told by him that Nagy believed he had never signed such a document. *Id.* at 15, 38. Plans were then made to speak to plaintiff about the signatures on February 14, 1986, the next day, after the subpoena

was delivered. *Id.* at 15, 37.[1]

On February 14th, Mr. Stall did interview plaintiff with Doug Elliott, his supervisor, present. *Id.* at 16. Mr. Stall told her a subpoena was served and asked whether she was aware of it. *Id.* at 17–18. *See, also,* Affidavit of Sandra Dawson at ¶ 4. She responded that she was aware of it and had contacted an attorney. Stall Deposition at 17–18. He then advised her that inquiry had been made about the two verification letters containing understated income information and that this situation was his main concern. *Id.* at 19, 21. In response to Mr. Stall's inquiry as to whether plaintiff prepared the two verification statements, she responded that she had done so and that she had signed the names of the supervisors and submitted them to PMHA. *Id.* at 22–23. *See, also, id.* at 55 (Such inquiry was made three times.).

Mr. Stall immediately suspended plaintiff on the basis of the seriousness of the situation pending further investigation which she was advised could involve disciplinary action up to and including discharge. *Id.* at 24. The reason for the suspension was the suspicion that plaintiff had forged the signatures. *Id.* at 25. Upon further investigation, Ohio Edison officials decided to terminate plaintiff's employment. *Id.* at 26. A letter dated February 26, 1986 was sent to plaintiff converting her suspension to a termination and advising her that the investigation resulted in the following conclusions:

> You violated expected and normal practices by representing incorrect information as official company information.
>
> You signed the signatures of your supervisors without their knowledge and with no attempt to identify the signatures as other than bona fide signatures.
>
> No copies of the documents were retained in your employee files, as normally practiced.

Stall Deposition Exhibit B. *See, also,* Stall Deposition at 27–28. These were the rea-

sons for her discharge, *id.* at 29, not the fact that a subpoena was served upon Ohio Edison by Detective Craig. *Id.* at 28. (Mr. Martin's objection to this response has been considered and is overruled.). The uncontradicted evidence before the court makes it clear that while Mr. Stall became involved in the investigation of the letters submitted and spoke to plaintiff about that matter as a result of Detective Craig's service of the subpoena, he would have confronted and eventually suspended her regardless of its issuance. Stall Deposition at 47, 60.

Plaintiff states in her affidavit that when she was suspended by Mr. Stall and Mr. Elliott, they told her that a criminal case was pending and that she was suspended because of that fact and because the subpoena was served. Affidavit of Sandra Dawson at ¶ 4. Mr. Stall testified in his deposition that he did not know of a criminal case pending against plaintiff on February 13 or 14, Stall Deposition at 48, 57, 62, and that the serving of the subpoena had nothing to do with that suspension. *Id.* at 60. This does not raise a material issue of fact, however, in that the letter of termination and statements of Mr. Stall indicate that plaintiff's *termination* was based solely on reasons other than the service of the subpoena. This evidence is undisputed and while the subpoena may have been a triggering event, it had no effect on the termination decision.

On February 19, 1986, after hearing on plaintiff's motion, Judge Thomas J. Carnes quashed the subpoena because it was not issued in compliance with Ohio statutes. It was determined at the hearing that, in fact, no case was filed bearing the caption *State of Ohio v. Sandra F. Dawson.* Complaint at ¶ 12. Inasmuch as the subpoena was quashed, no Ohio Edison documents were ever turned over by Mr. Stall to Detective Craig. Stall Deposition at 30.

After plaintiff was terminated from her position with Ohio Edison, she had difficulty finding another job and has never found

---

**1.** It is noted here, somewhat parenthetically, that the deposition does contain hearsay testimony of a nature similar to that discussed above in relation to Mr. Martin's statement.

The depositional record contains no objections impacting on such testimony but the testimony referred to is itself of marginal importance to this decision.

equivalent employment. She lost approximately $5,000.00 in wages between February 26 and June 30, 1986. She subsequently lost her car, was evicted from her rental unit and was forced to file bankruptcy. *See* Affidavit of Sandra F. Dawson at ¶ 6.

Plaintiff plead no contest to a bill of information in the Portage County Court of Common Pleas charging one count of theft on June 30, 1986. She submits that this event terminates her claim for damages. Complaint at ¶ 18.

This court ruled on January 25, 1988 that the facts could support no claim of fourth amendment deprivation. The issue now before the court is whether plaintiff's fourteenth amendment due process rights were violated for purposes of section 1983 relief.

■ The jurisdictional prerequisites and ultimate requirements for a section 1983 action are the deprivation of a Constitutionally protected right by persons or entities acting under color of law. There must, in addition, be a causal connection between action taken under color of law and what is claimed as a constitutional deprivation. The court finds that plaintiff cannot establish a section 1983 claim for the following reasons.

■ The only conduct by state actors shown by the evidence is the issuance of a subpoena by defendant City and its service by defendant Craig. Though this is official conduct, plaintiff's termination was considered and decided by her employer, a private entity. If a private employer takes such action on the basis of false or defaming information provided by a state official, the requisite state action may be found. *See Bone v. City of Lafayette, Ind.*, 763 F.2d 295, 298 n. 1 (7th Cir.1985). In this case, however, the undisputed evidence is that the negative job action was taken for plaintiff's conduct in falsifying income verification records to PMHA, which she admitted, and was in no way based upon the service of a subpoena. Further, her employer was informed of this matter by PMHA several months before the subpoena issued. The only causal connection between plaintiff's termination and the service of the subpoena is that it brought the

falsification issue to light and prompted the confrontation. Clearly, it would have happened anyway at one point or another. So, while it brought the matter to a head, the subpoena and false indication of criminal proceedings did not cause plaintiff's employer to terminate her employment.

In addition, her due process rights were not violated by the service of the subpoena. Plaintiff asserts that the subpoena indicated on its face that a criminal case was pending against her and that this fact caused her reputational injury plus loss of employment, a combination recognized by the Supreme Court as capable of invoking the protection of the due process clause. *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976). Aside from the fact that Mr. Stall testified that he was actually not aware from the subpoena of the existence of criminal proceedings, Stall Deposition at 62–63, which in fact had not been filed, he testified that it was the falsification of company income verification records that caused her termination and not the subpoena. Any reputational damage or stigma, therefore, was caused by her admitted violation of company policy and not the subpoena's wrongful indication that criminal charges were pending against her. Furthermore, in this case as in *Paul v. Davis*, even if there is an injury to reputation, there was no deprivation of any recognized liberty or property interest guaranteed against deprivation by the state without due process of law. 424 U.S. at 712, 96 S.Ct. at 1165–66.

*Paul v. Davis* is frequently analyzed as stating a doctrine of "stigma-plus"; *i.e.*, defamation plus additional state action affecting a guaranteed liberty or property interest will support a section 1983 action. *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir.1986); *Bone v. City of Lafayette, Ind.*, 763 F.2d at 298; *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1138–39 (7th Cir.1984). The doctrine frequently applies when circumstances involve the discharge of an employee by a government employer in conjunction with some public statement affecting the employee's future employability. *Bone v. City of Lafayette,*

*Ind.,* 763 F.2d at 298. Such action may affect a property interest in the lost employment and/or a liberty interest if the defamatory aspect affects the employees ability to pursue a trade, profession or other calling.

In this case, plaintiff was employed by a private entity, and there is no basis under the facts stated for concluding that the defendants infringed any legitimate claim of entitlement to her job pursuant to state law. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548 (1972). Plaintiff contends that her employment was not at-will, a doctrine recognized in this state, *Phung v. Waste Management, Inc.,* 23 Ohio St.3d 100, 491 N.E.2d 1114 (1986), but rather a relationship set in a for-cause environment. *See Biskupich v. Manor Nursing Home,* 33 Ohio App.3d 220 (Cuyahoga County Ct. App.1986). It is true that Ohio Edison provides an appeals procedure for employees who are terminated. Plaintiff was so informed in her letter of termination. However, the reasons for her termination include neither the service of a subpoena nor any indication that a criminal case was pending against her. Therefore, even if Ohio Edison's provision for appeal of negative employment decisions converts plaintiff's employment to something other than one at-will and in turn affords her a property interest protectable by the constitution, that interest was not affected by the defendants' conduct.

Equally unavailing is the claim of a protectable liberty interest in this case. The interest was explained by the Seventh Circuit Court of Appeals as follows:

[T]he courts have found a deprivation of liberty when the employee was fired for a publicly announced reason that impugned his moral character. *See, e.g., Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam); *Hadley v. County of DuPage,* 715 F.2d 1238, 1245–47 (7th Cir.1983); *Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir.1976). The concept of liberty in Fourteenth Amendment jurisprudence has long included the liberty to follow a trade, profession, or other calling. This liberty must not be confused with the right to a job; states have no constitutional duty to be employers of last resort; but if a state excludes a person from a trade or calling, it is depriving him of liberty, which it may not do without due process of law. *See, e.g., Truax v. Raich,* 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915); *Schware v. Board of Bar Examiners,* 353 U.S. 232, 238, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957); *Lipp v. Board of Educ.,* 470 F.2d 802, 805 (7th Cir. 1972). And when a state fires an employee for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or other job-related moral turpitude, the consequences are so nearly those of formally excluding him from his occupation that the law treats the state's action the same way, and insists that due process be provided.

*Lawson v. Sheriff of Tippecanoe County,* 725 F.2d at 1138–39.

In a stigma-plus analysis of this situation, the defamatory statements must unite with a negative effect on an employee's future employment. *See Paul v. Davis,* 424 U.S. at 712, 96 S.Ct. at 1165–66. Here, the defamatory statement plaintiff alleges to have been made was the false indication on the subpoena that a criminal case was pending against her. That statement, however, was not a reason for the job action. The published reasons for her termination involved her violations of company policy by falsifying company records. Thus, the state action here of serving the subpoena cannot be superimposed upon the private employment action to reach a stigma-plus status because the state action was not a cause of the termination. If plaintiff's future employability is affected by the termination, it is for reasons independent of the issuance of the subpoena and for conduct which she admits. *See Bootz v. Childs,* 627 F.Supp. 94, 98–99 (N.D.Ill.1985).

Accordingly, the court finds that there is no material issue of fact and that summary judgment is properly entered in favor of the defendants, and this case is dismissed.

■ Defendants also seek attorney fees as a prevailing party under 42 U.S.C. § 1988, a matter within the discetion of the court. In order to be entitled to an award of attorney fees under § 1988, the defendants must first demonstrate that they are prevailing parties in this matter. The fact that they prevailed in the sense that the plaintiff's complaint was dismissed is insufficient by itself to make the defendants prevailing parties. A victorious defendant in a section 1983 action must establish plaintiff's frivolity under the standards announced in *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The Supreme Court has held:

> that the defendant in an action brought under Title VII of the Civil Rights Act of 1964 may recover attorney's fees from the plaintiff only if the District Court finds "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Although arguably a different standard might be applied in a civil rights action under 42 U.S.C. § 1983, we can perceive no reason for applying a less stringent standard. The plaintiff's action must be meritless in the sense that it is groundless or without foundation. The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees. As we stated in *Christiansburg:* 'To take the further step of assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII. Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a cout finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.' (Citations omitted.)

*Hughes v. Rowe*, 449 U.S. 5, 14–15, 101 S.Ct. 173, 178–79, 66 L.Ed.2d 163 (1980). The *Christiansburg* standards apply in a section 1983 action. *Tarter v. Raybuck*, 742 F.2d 977, 985–86 (6th Cir.1984).

■ Inquiry must be made into the plaintiff's basis for bringing the action. *Smith v. Smythe–Cramer Co.*, 754 F.2d 180, 183 (6th Cir.1985). Courts have awarded attorney fees to prevailing defendants in the following instances: where no evidence supports plaintiff's position; the defects in the suit are of such magnitude that plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings; or there is no arguable basis for pursuing the claim. *Id.* at 183–84. Moreover, courts have awarded attorney fees to prevailing defendants following a dismissal of the plaintiff's claim in summary judgment. *E.g., Buford v. Tremayne*, 747 F.2d 445 (8th Cir.1984); *Munson v. Friske*, 754 F.2d 683 (7th Cir.1985). However, it must be emphasized that the mere fact that allegations are proved to be legally insufficient to require trial, does not on that basis alone, render a complaint groundless under *Christiansburg. Smith v. Smyth–Cramer Co.*, 754 F.2d at 183; *See, also, Hughes v. Rowe*, 449 U.S. at 16, 101 S.Ct. at 179.

After careful consideration of the matter the court finds tht the *Christiansburg* standards are not satisfied and no award of attorney fees and costs should be made to the defendants under section 1988. This court cannot say that plaintiff's allegations were so "frivolous, unreasonable, or without foundation" as to meet the *Christiansburg* standards. Without a finding that plaintiff's allegations lacked even a scintilla of evidence, an award of attorney fees would be inappropriate. *See Buford v. Tremayne*, 747 F.2d 445, 448 (8th Cir.1984); *Munson v. Friske*, 754 F.2d at 696–97.

Consequently, the defendants' motion for attorney fees and costs is denied.

IT IS SO ORDERED.