865 F.2d 257
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sandra F. DAWSON, Plaintiff-Appellant,
v.
CITY OF KENT, an Ohio municipal corporation; Ronald L.
Craig, in his official and individual capacities,
Defendants-Appellees.
 No. 88-3315.
 United States Court of Appeals, Sixth Circuit.
 Dec. 28, 1988.
 
 Before KEITH, KENNEDY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Sandra F. Dawson, appeals from the District Court's entry of summary judgment for defendants, the City of Kent and one of its officials, Ronald Craig, in plaintiff's section 1983 action alleging that defendants' issuance of an invalid subpoena for her wage and salary records caused her discharge by a private employer. See Dawson v. City of Kent, 682 F.Supp. 920 (N.D.Ohio 1988). Plaintiff argues that the District Court erred in finding no causal relationship between the issuance of the subpoena and plaintiff's termination. Plaintiff also asserts that the District Court erred in refusing to grant a continuance in order to allow plaintiff to discover defendants' records relevant to establishing a custom or practice of premature issuance of subpoenas. We affirm because no genuine issue of material fact existed to preclude the District Court from finding no causal relationship between the subpoena and plaintiff's discharge.
 
 
 2
 In 1983 plaintiff became a resident of Summit Gardens, a government subsidized housing project in Portage County, Ohio. From that time until February 26, 1986, plaintiff was employed as an information specialist by the Ohio Edison Company. Sometime in 1985 the Portage Metropolitan Housing Authority (PMHA) began an investigation into allegations of improper rent subsidies at the Summit Gardens. On October 10, 1985 PMHA contacted Ohio Edison by letter seeking verification of plaintiff's income because plaintiff was suspected of submitting fraudulent wage certification letters to PMHA.
 
 
 3
 On February 13, 1986, defendant Craig called Alex Stall, district manager of the Kent Office of Ohio Edison where plaintiff worked. Craig called to determine the proper location to serve a subpoena for plaintiff's records. After questioning his supervisor concerning the call, Stall was informed of the prior PMHA request and an ongoing Ohio Edison internal investigation. Stall made plans to discuss the possible falsification of wage statements with plaintiff after service of the subpoena on February 14, 1986.
 
 
 4
 After service of the subpoena on the 14th, Stall interviewed plaintiff in the presence of Doug Elliot, her supervisor. Stall informed plaintiff of the subpoena's service and she informed him that she had hired an attorney. During the course of the interview plaintiff admitted signing the names of two supervisors on two wage verification statements and submitting them to PMHA. Stall immediately suspended plaintiff pending further investigation.
 
 
 5
 Ohio Edison thereafter terminated plaintiff's employment. In a letter dated February 26, 1986 the company converted plaintiff's suspension into a termination allegedly for: (1) misrepresenting information; (2) forging the signatures of her superiors; and (3) failing to place copies of the income reports in her file as was customary. Stall and Ohio Edison maintain that these were the sole reasons for plaintiff's discharge. Plaintiff asserts, however, that she was suspended, and by implication subsequently terminated, because of Stall's mistaken belief that a criminal case was pending against her and because of service of the subpoena.[1]
 
 
 6
 Plaintiff filed a 1983 suit alleging deprivation of her rights under the fourth and fourteenth amendments. The District Court granted summary judgment in defendants' favor on both claims. The District Court found plaintiff had demonstrated no material factual dispute concerning the reason for plaintiff's discharge which the court reasoned was motivated by the plaintiff's forgery of her superiors' signatures and not the service of the subpoena.[2] Alternatively the court found that even if defendants' service of the subpoena caused plaintiff's discharge, her Due Process rights were not violated under the "stigma-plus" analysis of Paul v. Davis, 424 U.S. 693 (1976). Plaintiff appeals.
 
 
 7
 We conduct our review of a district court's decision granting summary judgment using the same standard as that employed by the District Court. A trial is not needed "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Important for our purposes here is the Supreme Court's observation that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. Disputes over irrelevant or immaterial facts matter not.
 
 
 8
 Plaintiff claims to have demonstrated a factual dispute concerning the motivation for Ohio Edison's discharge of plaintiff which precluded the District Court from entering summary judgment for defendants. Plaintiff, however, has marshalled little evidence going to the termination issue. Plaintiff's recitation of two alleged inconsistencies in Stall's testimony--one concerning his knowledge of a possible criminal investigation and the other concerning his participation in further investigation of the alleged forgeries prior to plaintiff's discharge--do not undermine Stall's assertion and the objective evidence that plaintiff was fired as a result of the forgery incident and not because of the service of a subpoena. Lastly, plaintiff's own affidavit simply states her observations and belief that she was suspended because of the criminal investigation not that she was fired because of it.
 
 
 9
 In contrast, defendants' proffered evidence remains practically unchallenged. Defendants demonstrated that an internal investigation at Ohio Edison had revealed the signatures on plaintiff's wage verification statements to be forgeries. In fact, several days prior to the date of the discharge letter, both supervisors whose signatures were in question sent memos to Stall confirming that the signatures on plaintiff's statements were not theirs. The company's termination letter specifically stated that plaintiff was discharged for reasons relating solely to the forgery of her superiors' names. Furthermore, Mr. Stall consistently maintained that plaintiff's forgery had caused her discharge and that his decision had nothing to do with the fact that a criminal action might have been pending or a subpoena served.
 
 
 10
 Plaintiff did not put forth sufficient evidence to dispute defendants' evidence that Ohio Edison fired plaintiff for her forgery and not because of the company's receipt of a subpoena for her records. This is a case where the nonmoving party's evidence "is not significantly probative" to stave off a motion for summary judgment. See Liberty Lobby, 477 U.S. at 249-50 ("[i]f the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted"); First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 290 (1968). Plaintiff's demonstration of two possible inconsistencies in Stall's testimony did not cast significant doubt upon Stall's assertion that he fired plaintiff because she had forged the signatures of her superiors.
 
 
 11
 Although courts should be reluctant to grant summary judgment in cases presenting issues of intent, see, e.g., Pfizer, Inc. v. International Rectifier Corp., 538 F.2d 180, 185 (8th Cir.1976), cert. denied, 429 U.S. 1040 (1977), plaintiff's "merely colorable" showing examined in the light of the other undisputed facts in this case would not support a jury verdict for her. Therefore summary judgment in favor of defendants was appropriate.
 
 
 12
 For the foregoing reasons the decision of the District Court is affirmed.
 
 
 
 [1]
 At a separate hearing held on February 19, 1986 the subpoena was quashed because it was not issued in compliance with Ohio statutes. At the same hearing it was determined that no criminal case had been filed at the time of service. Dawson, 682 F.Supp. at 923
 
 
 [2]
 In an earlier ruling the District Court entered summary judgment for defendant on plaintiff's fourth amendment claim because no search or seizure actually took place; thus, plaintiff's fourth amendment rights against unreasonable searches and seizures were not violated. The District Court's ruling in this respect is not before this Court