**Mary Lou LAWSON, Plaintiff-Appellant,**

v.

**SHERIFF OF TIPPECANOE COUNTY, INDIANA, et al., Defendants-Appellees.**

**No. 82–1838.**

United States Court of Appeals, Seventh Circuit.

Submitted Dec. 1, 1983.

Decided Jan. 23, 1984.

**9.** *See also* 18 U.S.C. § 4165 (1976), *supra* note    2, and 18 U.S.C. § 4166 (1976), *supra* note 8.

John M. Burgett, Lafayette, Ind., Richard L. Russell, Bayliff, Harrican, . ord, Maugans & Russell, Kokomo, Ind., for plaintiff-appellant.

Paul D. Ewan, Schultz, Ewan & Burns, Joseph T. Bumbleburg, Ball, Eggleston, Bumbleburg & McBride, Lafayette, Ind., for defendants-appellees.

Before CUMMINGS, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The plaintiff brought this civil rights suit under 42 U.S.C. § 1983 against a sheriff in Indiana, and others, alleging that she had been deprived of liberty and property, without due process of law, because the sheriff fired her from her job as a police radio dispatcher. Her husband had just been arrested for alleged participation in an interstate automobile theft ring, and in firing her the sheriff made statements that were printed in the local newspapers to the effect that she had been fired because her job gave her access to the computer that contained automobile registration information, and she might have tampered with the com-

puter. The district judge dismissed her complaint on the basis of an affidavit, accompanying the defendants' motion for summary judgment, which stated that a few days after having been fired she was offered and declined alternative employment by the county, 537 F.Supp. 918.

Mrs. Lawson was an employee at will, and thus lacked a "property" interest (within the meaning of the due process clause of the Fourteenth Amendment) of which the sheriff could have deprived her when he fired her. *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972). And while she may have been defamed by the statements that the sheriff made in explanation of why he had fired her, the interest that is invaded by defamation, like the interest in employment at will, is not "property" or "liberty" within the meaning of the due process clause. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Elbert v. Board of Educ.,* 630 F.2d 509, 512–14 (7th Cir.1980). These holdings are based not on the dictionary meanings of the words in the due process clause but on a practical desire to prevent section 1983, the federal civil rights tort remedy, from swallowing up the entire common law of public officers' torts.

But the courts have found a deprivation of liberty when the employee was fired for a publicly announced reason that impugned his moral character. See, e.g., *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam); *Hadley v. County of DuPage,* 715 F.2d 1238, 1245–47 (7th Cir.1983); *Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir.1976). The concept of liberty in Fourteenth Amendment jurisprudence has long included the liberty to follow a trade, profession, or other calling. This liberty must not be confused with the right to a job; states have no constitutional duty to be employers of last resort; but if a state excludes a person from a trade or calling, it is depriving him of liberty, which it may not do without due process of law. See, e.g., *Truax v. Raich,* 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915); *Schware v. Board*

*of Bar Examiners,* 353 U.S. 232, 238, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957); *Lipp v. Board of Educ.,* 470 F.2d 802, 805 (7th Cir. 1972). And when a state fires an employee for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or other job-related moral turpitude, the consequences are so nearly those of formally excluding him from his occupation that the law treats the state's action the same way, and insists that due process be provided.

But this also implies, and the cases make clear, that there is no deprivation of liberty if the employee is not fired. See *Paul v. Davis, supra,* 424 U.S. at 710, 96 S.Ct. at 1165; *Moore v. Otero,* 557 F.2d 435, 438 (5th Cir.1977). He cannot in such a case complain of exclusion from his occupation. This was the ground on which the district court dismissed Mrs. Lawson's complaint. She was fired; but if she was immediately offered alternative employment by the county (she does not argue that a hiatus of a few days would be constitutionally significant), it is as if she had not been fired. But in so ruling the district court overlooked a qualification that the Fifth Circuit pointed out in the *Moore* case. The policeman who was the plaintiff in that case was demoted, but merely from corporal to patrolman, and the court left open the question whether he could have complained of a loss of liberty if he had been demoted all the way to janitor. See 557 F.2d at 438 n. 11. In our view an employer cannot avoid liability by offering the employee a job far beneath the one he had. To be demoted from a responsible and well-paid job to a menial and low-paying one is to be as effectively excluded from one's trade or calling as by being thrown out on the street. Indeed the consequences are very nearly identical, since a person who loses a responsible and well-paid job will usually be able to find a menial and low-paying job with another employer.

Neither in the affidavit that had been submitted with the motion for summary judgment nor anywhere else in the record before him did the district judge have any information about the nature of the alternative employment offered Mrs. Lawson. He therefore should not have dismissed the complaint. If the job she was offered was degradingly inferior to the job as police radio dispatcher from which she was fired, the offer did not negate the deprivation of liberty.

Mrs. Lawson also points out that a deposition that was before the district court on summary judgment contains her unequivocal denial that she was offered any alternative employment by the county. But when the defendants moved for summary judgment and attached the affidavit stating that she had been offered such employment, her counsel did not direct the judge to the portion of the deposition that contains her denial. The judge was not obliged to comb the record for evidence contradicting the defendants' affidavit, when the plaintiff's counsel failed to bring to the court's attention that there was any such evidence. But neither was counsel's failing so egregious that he should be forbidden on remand to contest the defendants' assertion that the county offered Mrs. Lawson another job. The defendants' affidavit indicates that the offer was made to her through her lawyer, and it is possible that the lawyer received the offer but for one reason or another did not convey it to her. It would still be a bona fide offer; the defendants cannot be charged with the failings of the plaintiff's agent. A possible reconciliation of the affidavit and of Mrs. Lawson's deposition, therefore, is that her lawyer failed to convey the offer to her. If so, still, as we have said, this would not negate the offer, and the issue would be whether the offer was of sufficiently comparable employment to negate the deprivation of liberty. Needless to say, we express no view on this issue, or on whether, if Mrs. Lawson was deprived of liberty, it was done without due process of law.

REVERSED AND REMANDED.