**M. Ruth BONE, Plaintiff-Appellee,**

v.

**CITY OF LAFAYETTE, INDIANA and Maurice E. Callahan, Individually and as City of Lafayette Engineer, Defendants-Appellants.**

**No. 82–1965.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 4, 1984.

Decided May 29, 1985.

Richard O. Bovey, Lafayette, Ind., for plaintiff-appellee.

Richard T. Heide, Heide, Gambs & Mucker, Lafayette, Ind., for defendants-appellants.

Before CUDAHY, COFFEY and FLAUM, Circuit Judges.

CUDAHY, Circuit Judge.

Appellee Ruth Bone brought this action under 42 U.S.C. § 1983 against appellants City of Lafayette, Indiana and City Engineer Maurice Callahan. The District Court for the Northern District of Indiana awarded Bone $17,500 in compensatory damages from Callahan and the City, and $35,000 in punitive damages from Callahan. We reverse and remand for additional findings of fact.

I.

In July 1975 Ruth Bone spoke with City Engineer Callahan and Building Inspector Charles Yoder about her plans for building

a home on a plot of land she owned in the City of Lafayette. Although two homes already stood on the lot, in apparent contravention of city ordinances, the lot had not been subdivided. Whether any of this was known by the officials with whom Bone spoke is disputed. On August 4, she made application for a permit to build; she submitted, as required, a plot plan. Whether city officials knew that the plan was of only that portion of her property on which the new home was to be built is disputed. On August 5, the city issued the permit. On August 6, construction began.

On September 15, 1975, a neighbor of Bone complained to the Engineer's office that construction on the Bone property did not conform to city ordinances. The city issued a stop order the next day.

Bypassing the opportunity for administrative appeal, Bone went directly to state court, where she requested a declaratory judgment interpreting the relevant city ordinances. The court held that city ordinances provided that only one single-family dwelling could be built on any undivided lot in the area in question, and that dividing the lot to permit the building of an additional home was subject to a special ordinance governing subdivision. *Bone v. City of Lafayette*, No. S2–727–75 (Super.Ct. No. 2, Tippecanoe County, Oct. 20, 1975). In April 1976, Bone filed this § 1983 action in the Northern District of Indiana.

While this case was pending in federal court, Bone complied with the subdivision ordinance, removing one of the older homes and dividing the land into two plots. A new permit was issued, and construction began again in September 1976. At some time during the dispute Elbert Strain, an officer of the bank which had provided the financing for the new home, inquired of the city about the difficulties which had arisen. According to Strain's testimony in this case, City Engineer Callahan told him that the plaintiff had lied on her original application for a building permit.

When the case came to trial in federal court, plaintiff Bone argued that she had been deprived of a property interest by the city's revocation of her building permit, and she asked for compensatory damages because of the delay the city had caused and for punitive damages. The district judge, focusing on the allegation that Callahan had said that she was a liar, found for Bone and awarded her damages.

## II.

The defendants argue that since the trial court based its holding on the finding that defendant Callahan said that the plaintiff lied, the only interest invaded was her interest in her reputation, an interest not legally cognizable, for purposes of a section 1983 lawsuit, under *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Since the trial court did indeed base its holding on the alleged injury to Mrs. Bone's reputation, we must inquire whether the requirements of *Paul v. Davis* are satisfied; or, if not, whether the district court made any other findings of injury that would support a § 1983 claim. If the answer to each question is no, we must remand for further findings.

There is no question that the trial court based its decision on the defamation. In the transcript of the May 28, 1982 hearing, at page 28, the district judge said:

The key to the case before us appears to be the conduct of Callahan in falsely—in what you say, falsely accusing Mrs. Bone of engaging in lying or misrepresentation.

At no point does the court make any finding as to Mrs. Bone's allegation that the revocation of the permit was deprivation of property without due process. Time and again, throughout the 83 page transcript of that final hearing, counsel on each side tried to address other issues, only to be forcibly directed by the court back to the issue of defamation. To counsel for the plaintiff, the court said:

Now I want you to zero in on that [misrepresentation] testimony. I don't want to know a lot of this stuff that you're telling me because a lot of it is not very helpful to you. I've indicated what I think is the central theme in this case,

and I want to know ... what statements Callahan made in inferring or stating that Mrs. Bone had [sic] misrepresentations.

*Id.* at 14. The court effectively refused to let counsel for the defendants address any other issue in his summation:

The Court: You understand what I'm concerned about? I'm zeroing in on Callahan's conduct [in accusing Mrs. Bone of misrepresentations].

*Id.* at 44. And in its own oral findings of fact and conclusions of law, the court said: "It's not that tough a case. We have heard a lot more evidence than is really necessary to decide the critical issue in the case." *Id.* at 65. "To a very large extent the linchpin of this case is a two-word phrase, quote, 'she lied,' end quote." *Id.* at 67. He found creditable the testimony of Mrs. Bone and Mr. Yoder to the effect that Mrs. Bone had not lied, *id.* at 68–72, and the testimony of Mr. Strain to the effect that Mr. Callahan had nevertheless said of Mrs. Bone that she had lied, *id.* at 73–74. And he closed, before awarding damages, by saying that something had to be done to prevent public officials from libeling honest citizens. We have searched the transcript in vain for any findings or conclusions bearing on anything other than the issue of defamation.

### III.

Before its 1976 ruling in *Paul v. Davis* the Supreme Court had consistently held that where reputation was at stake in government action, notice and an opportunity to be heard were essential. *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972); *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971); *Wieman v. Updegraff*, 344 U.S. 183, 191, 73 S.Ct. 215, 219, 97 L.Ed. 216 (1952). In *Wisconsin v. Constantineau*, a state statute which allowed officials to "post" the names of individuals who were to be denied the right to buy alcohol for various reasons was struck down as unconstitutional. The court had nothing to say about the right to buy alcohol, but found a denial of due process because of the "stigma" involved in the posting. In particular the Court did not address the question whether stigma in the absence of additional harm (such as deprivation of the right to buy alcohol) would raise due process concerns.

In *Paul v. Davis* that very question was raised and answered. Finding that "virtually every State" provided an action for defamation, the Court reasoned that § 1983 did not necessarily make injuries actionable simply because those injuries gave rise to state law tort claims, prior to its passage, and that injury to reputation was not distinguishable, in this respect, from other state law torts. Citing *Screws v. United States*, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945), for the first proposition, it found that a necessary element for making a state law tort actionable under § 1983 was that the tort should result in injury to some interest protected by the Constitution or federal laws. In particular the Court held that the due process clause of the Fourteenth Amendment did not extend constitutional protection to every injury an individual might suffer at the hands of government officials.

Nor can defamation be singled out from other state law torts in this regard:

The words "liberty" and "property" as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law. While we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interest such as employment, is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause.

424 U.S. at 701, 96 S.Ct. at 1160.

■ In previous cases in this circuit we have made clear that defamation together with other action (which need not itself be

a deprivation of either liberty or property under the Fourteenth Amendment) may work to deprive a plaintiff of a liberty or property interest, so that the two things together state a § 1983 claim. *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1138 (7th Cir.1984); *Smith v. Board of Education*, 708 F.2d 258, 266 n. 6 (7th Cir.1983); *Elbert v. Board of Education*, 630 F.2d 509, 512 (7th Cir.1980), *cert. denied*, 450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981); *Colaizzi v. Walker*, 542 F.2d 969, 975–74 (7th Cir.1976), *cert. denied*, 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977). The combination arises most frequently when an employee is discharged by a government employer; should the government agency at the same time publicly defame the employee, he may be deprived of a liberty interest: the interest in the possibility of future employment in his profession.

Although these cases are cited in support of a doctrine of "stigma-plus"—the doctrine that defamation plus additional state action will support a § 1983 action—the proper focus is on the *consequence* of the state action. In *Lawson, supra,* we said:

The concept of liberty in Fourteenth Amendment jurisprudence has long included the liberty to follow a trade, profession, or other calling. This liberty must not be confused with the right to a job; states have no constitutional duty to be employers of last resort; but if a state excludes a person from a trade or calling, it is depriving him of liberty, which it may not do without due process of law. And when a state fires an employee for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job

because of dishonesty or other job-related moral turpitude, the consequences are so nearly those of formally excluding him from his occupation that the law treats the state's action in the same way, and insists that due process be provided. 725 F.2d at 1138–39 (citations omitted).

■ Thus, our discussion in *Lawson* makes clear that the mere additional fact of firing is neither necessary nor sufficient in a § 1983 action. Defamation alone will suffice if it results in a deprivation of a property or liberty interest without due process.[1] *See Perry v. FBI*, 759 F.2d 1271 (7th Cir.1985) (remand to determine whether allegedly defamatory FBI report about nongovernmental employee resulted in deprivation of cognizable interest without due process); *Larry v. Lawler*, 605 F.2d 954, 958 (7th Cir.1978) (civil service report labeling non-governmental employee an alcoholic barred him from government work and would support a § 1983 suit). But defamation plus a contemporary firing will *not* suffice if it can be shown not to affect plaintiff's liberty or property interests. Thus a defamation not going to employability will probably not support such a suit, whether or not the plaintiff was fired contemporaneously by the government. (Naturally if the additional state action—the firing or the refusal to rehire, say—is itself a deprivation of some cognizable interest, the claim can be based on that alone, and the allegation of defamation is not necessary.)

■ What is essential under *Paul v. Davis*, then, is that the defamation result in some deprivation of a recognized property or liberty interest. Unfortunately for the plaintiff, the trial court made no finding as to any injury other than injury to reputa-

---

1. *Lawson* goes on to say, "But this also implies, and the cases make clear, that there is no deprivation of liberty if the employee is not fired." 725 F.2d at 1139. But the context makes clear that this is just the most usual juxtaposition of events that will result in depriving a plaintiff of the opportunity to practice his trade or profession. A claim would be recognized under the reasoning in *Lawson* if it alleged that upon his firing from a job in private industry—perhaps in a government-related or defense industry

job—the state falsely announced that the plaintiff had been fired for dishonesty or moral turpitude. The consequences of such action are likely to be precisely the same as when the plaintiff has been fired by the government. Nevertheless, such incidents are likely to be rare, and in the normal course of events the government firing is essential to raise the likelihood that the defamation would be viewed by prospective employers as being something sufficiently serious as to affect his employability.

tion. The trial court apparently understood the outcome in *Paul v. Davis* to be based on the fact that there was no defamation in that case. At the final hearing on May 28, 1982, during defendant's summation, we find the following exchange:

> The Court: There isn't any defamation in *Paul v. Davis*. The fact that was published was true; i.e., the man had been arrested. *Paul v. Davis* would go down entirely different if, in fact, the man had not been arrested and was on the list; would it not, under the Rehnquist rationale?
>
> Mr. Bauman: I don't think so, Your Honor.
>
> The Court: Why not? It's critical in that case—
>
> Mr. Bauman: Well—
>
> The Court: —that the man had, in fact, been arrested. He hadn't been tried; he hadn't been convicted. But the fact of arrest was true.... [I]f you turn that one fact around in *Paul v. Davis*, I can't see the result at all.

Transcript at 51–53.

Understanding *Paul v. Davis* in that way, the court apparently believed that a genuine defamation would support a § 1983 action, and apparently felt no need to make additional findings of injury. At page 76 of the transcript, near the end of his findings of fact and conclusions of law, the district judge said:

> Public officials who have a ready pulpit, who have ready access to the media in many cases that the ordinary citizen does not; public officials who engage in reckless or loose allegations of criminal or other misconduct of ordinary citizens, when that is clearly established can be, and I respectfully suggest, should be,

under 1983 and other similar statutes, held pecuniarily liable for that misconduct or reckless misconduct on the part of public officials.

And on page 75, he said:

> There is a sensitivity in our society under § 1983 and under other specified statutes to protect the reputation of people from false statements of law enforcement officials and others.

This conclusion of the district judge, insofar as it suggests a federal defamation action under § 1983, is erroneous. *Paul v. Davis* requires that a § 1983 action be based on some deprivation of rights other than defamation.

The district judge in fact made no findings at all with respect to the injury caused by the revocation of the building permit— nor did he allude to any other property or liberty deprivation caused by the defamation—and it is upon such an injury or deprivation, and not upon the defamation, that a § 1983 action must be based. We find, therefore, that the requirement under *Paul v. Davis* that injury in addition to that to reputation be shown has not been satisfied in this case.

### IV.

The judgment of the district court is vacated and the matter remanded for proceedings consistent with this opinion.[2]

Rule 18 will apply on remand.

**2.** We would call the district court's attention to this circuit's holding in a somewhat similar case, *Albery v. Reddig*, 718 F.2d 245 (7th Cir. 1983). We found that adequate state procedures were available to the plaintiffs in that case, and said:

> That the zoning laws may have been administered negligently or without an appropriately sensitive concern for plaintiffs' interests is not a violation of their Fourteenth Amendment rights if state remedies are adequate. The

Alberys have been subjected to an uncertain, and perhaps frustrating, administration of a typically local regulation. But they have not been deprived of a property interest (or even more clearly of a liberty interest) without due process of law.

718 F.2d at 251. A decision as to whether a deprivation of constitutional rights can be shown in this case must wait upon the appropriate findings of fact.