62 F.3d 1419
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Leslie BIENZ, Plaintiff/Appellant,
v.
Linda K. BLOOM, individually and as Auditor of Allen County,
Allen County Board of Commissioners, Jack C.
McComb, et al., Defendants/Appellees.
 No. 94-3941.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 13, 1995.
Decided July 13, 1995.
 
 Before POSNER, Chief Judge, and CUMMINGS and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Leslie Bienz appeals the district court's grant of summary judgment against her. Bienz was an employee of the Allen County Auditor's office in Indiana before being fired by Linda K. Bloom, the elected Auditor of Allen County. Bienz alleges that she was fired for refusing to participate in Bloom's scheme to racially discriminate against an Allen County employee. Bienz brought suit under 42 U.S.C. Sec. 1983 against Bloom and the Board of Commissioners of Allen County, claiming that her termination deprived her of property and liberty interests without due process, in violation of the Fourteenth Amendment. Bienz also brought a Title VII claim for retaliatory discharge that has been abandoned on appeal: Bienz had failed to take the necessary procedural steps required for a Title VII claim. The district court granted summary judgment for Bloom and the commissioners, finding that Bienz had no protectible interests and therefore deserved no due process regarding her termination. Bienz appeals. We affirm.
 
 I. Background
 
 2
 Leslie Bienz began working in the Allen County Assessor's office in 1975, first as an inheritance tax deputy and then as a real estate appraiser deputy. In 1986, Linda Bloom, who had been the Allen County Treasurer, was elected as the Allen County Auditor. Bienz had a good working relationship with Bloom and, in 1988, Bloom hired Bienz to work in the auditor's office as Supervisor of Assessments. The duties of this job included supervising a staff of six to ten persons and making recommendations to Bloom on whom to hire and fire.
 
 
 3
 According to Bienz, there were significant racial problems at the auditor's office: Bloom was hostile to black employees. Two black female county employees had filed race discrimination complaints against Bloom because Bienz had been hired as Supervisor of Assessments instead of them.[1] According to Bienz, as a result of the complaints, Bloom gave the two women poor evaluations and they eventually quit. Phyllis Howard, one of the two black women, testified that Bloom had become hostile to her after the complaint was filed and encouraged her to quit. (Howard Aff., App. Vol. II at 39-40).
 
 
 4
 A third black woman, Gertrude Smith, who had worked in the treasurer's office under Bloom, obtained relief on her discrimination complaint, filed after Bloom had left, and was transferred and promoted to the auditor's office. Smith testified that Bloom, while treasurer, had been racially hostile to Smith and this hostility continued in the auditor's office. (Smith Aff., App. Vol. II. at 43-46).[2] Bloom fired Smith in 1991 for taking unauthorized tax deductions, but Smith was reinstated. Bienz alleges that Bloom told her that the reinstatement was because of a second discrimination suit that Smith had filed.[3]
 
 
 5
 According to Bienz, Smith's original promotion and 1991 reinstatement caused resentment at the auditor's office. In October 1991, Bloom instructed Bienz to set Smith up to be fired for cause: Bloom would assign Smith a job she was not trained for and Bienz would give Smith poor evaluations. Smith testified that her job duties did indeed become considerably more difficult after her reinstatement. (Smith Aff., App. Vol. II at 46). Bienz refused to participate in the effort to cause Smith's dismissal and allegedly told Bloom, "You can't do that, that's illegal and you'll lose again," to which Bloom replied, "You're incompetent and you're no manager." (Bienz Aff., App. Vol. II at 14).
 
 
 6
 In December 1991, Bloom fired Bienz, without notice or hearing. In January, Bienz attempted to file a grievance with the Allen County Personnel Department, but was told that she was an employee-at-will, for which there was no grievance procedure. Bienz took a copy of her grievance to the Allen County Commissioners, who took no action on the matter. Bienz then filed this lawsuit.
 
 
 7
 Bienz sues under Sec. 1983, claiming a violation of due process. She also claims a violation of her equal protection rights and that the commissioners engaged in a conspiracy to deprive her of constitutional rights. The district court granted summary judgment for Bloom and the commissioners, and Bienz appeals.
 
 II. Analysis
 
 8
 A grant of summary judgment is reviewed de novo, viewing the record and the inferences drawn from it in the light most favorable to the non-moving party; in this case Bienz. Home Ins. Co. v. Chicago & Northwestern Trans. Co., No. 94-3385, slip op. at 4 (7th Cir. May 23, 1995) (citations omitted).
 
 
 9
 A. Substantive Due Process: Liberty Interest in Protesting Discrimination
 
 
 10
 Bienz claims that she has a "liberty right ... not to involve herself in Linda K. Bloom's illegal racial discriminatory strategy." (Bienz Br. at 15). Bloom counters that this court has never held such a liberty interest to exist. However, although Bienz has not made this specific argument, this court has held that "[a] government employee cannot be fired for the nondisruptive exercise of his First Amendment right to express himself on matters of public concern." Marshall v. Allen, 984 F.2d 787, 794 (7th Cir. 1993). Further, in Marshall, we held that the First Amendment's freedom of association protects the verbal and nonverbal support of a co-employee who had been allegedly discriminated against. Id. at 799.
 
 
 11
 However, Bienz does not assert that her refusal to set-up Smith was protected by the First Amendment, and Bienz's counsel admitted at oral argument that no First Amendment claim was raised before the district court. "A litigant forfeits appellate review of an issue by failing to raise it in the district court." Cheek v. Western & Southern Life Ins. Co., 31 F.3d 497, 505 (7th Cir. 1994) (citing United States v. Olano, 113 S. Ct. 1770, 1776 (1993)). Bienz, therefore, has forfeited any First Amendment claim.
 
 B. Procedural Due Process
 
 12
 "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569 (1972). "[A] court confronting a procedural due process claim must initially determine whether the government deprived a person of a protected life, liberty or property interest as a matter of substantive law, and, only if the answer is positive will the court reach the question of whether the deprivation took place without the process that was due." Wilson v. Formigoni, 42 F.3d 1060, 1065 (7th Cir. 1994) (citations omitted). Bienz raises two allegedly protected interests that have been deprived: (1) a property interest in her job; and (2) a liberty interest in her future employment.
 
 
 13
 1. Property Interest in Continued Employment
 
 
 14
 Bienz claims that she has a protected property interest in her job that was deprived without due process. "The existence of a substantive property interest in public employment is ordinarily a question of state law." Fittshur v. Menomonee Falls, 31 F.3d 1401, 1405 (7th Cir. 1994) (citing Board of Regents, 408 U.S. at 577)). The state law may be a contract, statute, or an unwritten common law of employment. Lawshe, 16 F.3d at 1480 (citing Perry v. Sindermann, 408 U.S. 593, 602 (1972)). "A common law of employment is established through rules or mutually explicit understandings and not solely through the past practices of the employer." Id. (quoting Hermes v. Hein, 742 F.2d 350, 355 (7th Cir. 1984)).
 
 
 15
 In Bienz's case, Bienz has not alleged that an employment contract or Indiana statute grants her a property interest. She does allege that the Allen County personnel manual created a property interest by requiring certain procedures before an Allen County employee could be fired. "The weight of authority in Indiana holds that a public employer's rules and regulations can create a property right when they are appropriately promulgated." Lawshe, 16 F.3d at 1481. Thus, a properly promulgated personnel manual can create a mutually explicit understanding that gives rise to a property right under Perry's common-law-of-employment theory. Id. at 1481-83. See also Gorman v. Robinson, 977 F.2d 350, 357 (7th Cir. 1992) ("The just cause provision accompanying the procedures contained in [the manual] was an assurance of continued employment.").
 
 
 16
 Bloom admits that Allen County adopted the personnel manual, but she disputes that the manual creates a property interest for Bienz. The manual defines those employees to whom the grievance procedures apply:
 
 
 17
 For the purpose of the following sections, "employee" is defined to include only non-policy, non-confidential, non-supervisory individuals who fall within the jurisdiction of the adopting agency.
 
 
 18
 CAVEATE: Employees falling outside the above definition or working for a non-adopting official or agency are employees-at-will. Any question concerning an individual's status should be directed to the Personnel Department.
 
 
 19
 (Bloom Appendix at 30).
 
 
 20
 Bienz's position was Supervisor of Assessments and her duties included supervision of six to ten employees. Thus, it would appear that she is a supervisor, as defined in the manual, and an employee-at-will, to whom the grievance procedures do not apply. The manual therefore creates no property interest for Bienz.
 
 
 21
 Bienz argues that she was de facto demoted from supervisor to deputy in October 1991, before she was fired. However, other than the fact that she perceived herself to be taken less seriously, Bienz offers no evidence, such as a pay-cut or change in job duties, that she was demoted. We affirm the district court's determination that Bienz, as Supervisor of Assessments, had no property interest in her continued employment.
 
 
 22
 2. Liberty Interest in Good Name/Future Employment
 
 
 23
 Bienz asserts a liberty interest in her future employment that has been deprived by her termination. She claims that her good name and reputation have been tarnished.
 
 
 24
 "The concept of liberty in Fourteenth Amendment jurisprudence has long included the liberty to follow a trade, profession, or other calling." Lawson v. Sheriff of Tippecanoe County, 725 F.2d 1136, 1138 (7th Cir. 1984).
 
 
 25
 [W]hen a state fires an employee for stated reasons likely to make him all but unemployable in the future, by marking him as one who has lost his job because of dishonesty or other job-related moral turpitude, the consequences are so nearly those of formally excluding him from his occupation that the law treats the state's action the same way, and insists that due process be provided.
 
 
 26
 Id. at 1139. See also Fittshur, 31 F.3d at 1409 (process due only where state charges employee with such immorality or dishonesty so as to foreclose future employment). In Bienz's case, Bienz has not presented any evidence that she was publicly charged with any dishonesty or immorality that would prevent her future employment. We hold that Bienz has not been deprived of a liberty interest in pursuing future employment.
 
 C. Equal Protection and Conspiracy
 
 27
 After her termination, Bienz filed a grievance with the Allen County Commissioners, which was not acted upon, apparently because they considered Bienz to be an employee-at-will. Consequently, Bienz claims that "there was a class based invidiously discriminatory animus behind the commissioners' nonaction because Leslie Bienz, a white female, had broken ranks with the white majority, in order to champion the rights of blacks not to be discriminated against at the workplace by Linda K. Bloom." (Bienz Br. at 16). Bienz appears to label this claim as a conspiracy to violate equal protection rights.
 
 
 28
 However, the claim of conspiracy, either amongst the commissioners or between Bloom and the commissioners, was not raised before the district court. The claim is therefore forfeited. Cheek, 31 F.3d at 505 (citing Olano, 113 S. Ct. at 1776).
 
 III. Conclusion
 
 29
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The complaints were filed at a state agency described as "Metropolitan Human Relations." (Howard Aff., App. Vol. II at 36); (Sims Aff., App. Vol. II at 51)
 
 
 [2]
 Smith testified that she had considered filing a discrimination suit earlier against Bloom for failing to promote her while at the treasurer's office, but had been afraid of losing the suit and losing her retirement benefits, which were about to vest. (Smith Aff., App. Vol. II at 43)
 
 
 [3]
 Smith had in fact not filed a discrimination suit at that time, but had a pre-termination hearing. The hearing resulted in Smith's reinstatement at the auditor's office. (Smith Aff., App. Vol. II at 45)