Paul HOFFMAN, Plaintiff,

v.

**Karl KELZ, in his individual capacity, The Village of Rib Lake, and Arch Excess and Surplus Insurance Company, Defendants.**

No. 06–C–0153–C.

United States District Court,
W.D. Wisconsin.

Aug. 3, 2006.

Charles D. Hoornstra, Corey F. Finkel-meyer, Assistant Attorney General, Madison, WI, Christopher Toner, Ruder Ware, Wausau, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for monetary and injunctive relief brought pursuant to 42 U.S.C. § 1983, plaintiff Paul Hoffman contends that defendant Karl Kelz violated his rights under the due process clause of the Fourteenth Amendment in two ways: by making negative remarks about him to defendant Village of Rib Lake, causing the board not to renew his contract as chief of police, and by making negative statements to prospective employers concerning plaintiff's ability to do his job, precluding him from obtaining employment in his chosen field. Jurisdiction is present. 28 U.S.C. § 1331.

Presently before the court is defendant Kelz's motion to dismiss plaintiff's first amended complaint. Plaintiff filed a second amended complaint on June 20, 2006. Defendant Kelz has chosen to stand on his motion to dismiss as his response to the second amended complaint.

For the reasons stated below, defendant's motion will be denied. Defendant

Kelz is not entitled to prosecutorial immunity under plaintiff's allegations because his actions were administrative in nature. In addition, although defendant Kelz was not plaintiff's employer, plaintiff's allegations suggest that he was personally involved in the decision not to rehire plaintiff. Also, plaintiff's allegations suggest that the statements defendant Kelz made to plaintiff's prospective employers were connected to the loss of his job. Finally, defendant Kelz is not entitled to qualified immunity at this time because plaintiff has alleged facts suggesting that defendant Kelz's conduct violated plaintiff's clearly established constitutional rights.

For the purpose of deciding the present motion, I find that plaintiff's second amended complaint fairly alleges the following facts.

## ALLEGATIONS OF FACT

### A. *Parties*

Plaintiff Paul Hoffman and defendant Karl Kelz are adult residents of Wisconsin. Defendant Village of Rib Lake is a municipal corporation organized under the laws of Wisconsin. Defendant Arch Excess and Surplus Insurance Company is authorized to operate within the state of Wisconsin and is the insurer of defendant Village of Rib Lake.

### B. *Failure to Renew Plaintiff's Contract*

Plaintiff served as chief of police for defendant Village of Rib Lake, which is located in Taylor County, Wisconsin. Defendant Kelz was District Attorney for Taylor County. On December 31, 2003, defendant Village of Rib Lake Board declined to renew plaintiff's contract because of statements made by defendant Kelz about plaintiff. Defendant Kelz made numerous negative and false public comments about plaintiff's ability to do his job, and about his honesty and his reliability. In the context of criticizing plaintiff's honesty and reliability, defendant Kelz stated

publicly that he would not prosecute cases investigated by plaintiff. Defendants Kelz and Village of Rib Lake did not provide plaintiff with a "name clearing hearing" in connection with the decision not to renew his contract. No procedures existed for such a hearing. Since the termination of his employment as chief of police, plaintiff has attempted and failed to obtain other employment in law enforcement. Defendant Kelz has made negative and false comments to plaintiff's prospective employers concerning plaintiff's reliability and honesty.

## DISCUSSION

### A. *Standard of Review*

■ In considering a motion to dismiss for failure to state a claim, the court must accept as true the well-pleaded factual allegations in the complaint, drawing all reasonable inferences in favor of the plaintiff. *Hishon v. King & Spalding,* 467 U.S. 69, 72, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Moranski v. General Motors Corp.,* 433 F.3d 537, 539 (7th Cir.2005). The court may dismiss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Lee v. City of Chicago,* 330 F.3d 456, 459 (7th Cir.2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. *Due Process*

■ The Fourteenth Amendment prohibits states from depriving citizens of life, liberty or property without due process of law. It is well established that defamation, or injury to one's reputation, by itself, does not implicate an interest protected by the due process clause. *Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (citing *Paul v. Davis,*

424 U.S. 693, 708–09, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)); *Atwell v. Lisle Park Dist.*, 286 F.3d 987, 992–93 (7th Cir.2002). However, "defamation together with other action … may work to deprive a plaintiff of a liberty or property interest, so that the two things together state a § 1983 claim." *Bone v. City of Lafayette, Ind.*, 763 F.2d 295, 297–98 (7th Cir.1985).

■ In this case, plaintiff alleges that defendant Kelz's "negative and false public comments" impugned plaintiff's honesty, reliability and job performance, thereby causing the loss of his job and hindering his ability to obtain other employment in the law enforcement field. Accepting this allegation as true, defendant Kelz's comments implicate plaintiff's interest in pursuing an occupation, which is a form of liberty protected by the due process clause. *Lawson v. Sheriff of Tippecanoe County, Ind.*, 725 F.2d 1136 (7th Cir.1984) ("The concept of liberty in Fourteenth Amendment jurisprudence has long included the liberty to follow a trade, profession, or other calling."); *see also Dupuy v. Samuels*, 397 F.3d 493, 503 (7th Cir.2005) ("when a state actor casts doubt on an individual's 'good name, reputation, honor or integrity' in such a manner that it becomes 'virtually impossible for the [individual] to find new employment in his chosen field,' the government has infringed upon that individual's 'liberty interest to pursue the occupation of his choice' ") (quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir.2001)); *Atwell*, 286 F.3d at 993 ("the dissemination of false information that renders a person unemployable is a constitutional tort").

Plaintiff alleges that defendant Kelz's comments caused the village board not to renew his contract. The court of appeals has recognized a due process claim in these circumstances. *Strasburger v. Board of Education, Hardin County Community Unit School District No. 1*, 143 F.3d 351, 355 (7th Cir.1998) ("state employees have a liberty interest in not being discharged from their employment while being defamed such that they cannot get other government employment"); *Lawson*, 725 F.2d at 1138 ("when a state fires an employee for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or other job-related moral turpitude, … the law … insists that due process be provided"); *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir.1987) ("infliction of a stigma to reputation accompanied by a failure to rehire … states a claim for deprivation of liberty without due process within the meaning of the Fourteenth Amendment").

Defendant Kelz argues that he should be dismissed from this case for four reasons: (1) he is entitled to prosecutorial immunity; (2) he is not a proper defendant because he was not plaintiff's employer; (3) his statements to prospective employers were not incident to termination; and (4) he is entitled to qualified immunity.

## C. *Prosecutorial Immunity*

■ Prosecutors are absolutely immune from suit "for their conduct in 'initiating a prosecution and in presenting the State's case,' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.' " *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). In addition, a prosecutor may be entitled to absolute immunity if his conduct is associated with the judicial phase of a civil proceeding so long as he is " 'functioning in an enforcement role analogous to' his role in criminal proceedings." *Smith v. Power*, 346 F.3d 740, 742 (7th Cir.2003) (quoting *Mendenhall v. Goldsmith*, 59 F.3d 685, 690 (7th Cir. 1995)). However, a prosecutor cannot

claim the privilege of absolute immunity simply because he is a prosecutor. *Houston v. Partee*, 978 F.2d 362, 365 (7th Cir. 1992). "A state prosecutor performing investigative or administrative functions ... may only assert a qualified immunity." *Id.*

■■■ According absolute immunity to prosecutors allows them to exercise their discretion impartially and prosecute those who violate the law vigorously, without the threat of civil liability. *Imbler*, 424 U.S. at 424–25, 96 S.Ct. 984. However, the Supreme Court has been hesitant to extend the reach of absolute immunity "further than its justification would warrant." *Harlow v. Fitzgerald*, 457 U.S. 800, 811, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Therefore, courts must begin an immunity inquiry with the presumption "that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns*, 500 U.S. at 486–87, 111 S.Ct. 1934. The official seeking absolute immunity bears the burden of showing his entitlement to it. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). The immunity inquiry focuses on the nature of the function performed rather than the title of the performer. *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

■■■ Defendant Kelz is not entitled to absolute immunity for his allegedly negative statements about plaintiff. Making statements that impugned plaintiff's competency, reliability and honesty cannot be characterized as an act "intimately associated with the judicial phase of [a] criminal process." *Imbler*, 424 U.S. at 430, 96 S.Ct. 984. In *Buckley*, 509 U.S. at 277, 113 S.Ct. 2606, the Supreme Court declined to extend absolute immunity to statements made by a prosecutor to the press concerning an individual who had been charged with murdering a child. The Court

stated that the "conduct of a press conference does not involve the initiation of a prosecution, the presentation of the state's case in court, or actions preparatory for these functions." *Id.* at 278, 113 S.Ct. 2606. Defendant Kelz's statements are further removed from the judicial process than the statements at issue in *Buckley*. Plaintiff alleges that defendant's statements caused the village board to decline renewal of plaintiff's contract as chief of police. This indicates that defendant Kelz made the statements in the course of advising the village board on a personnel matter. The fact that defendant Kelz referred to his prosecutorial function by stating that he would not prosecute cases investigated by plaintiff is irrelevant; the critical fact is that he was not acting as an advocate for the state in the course of a prosecution or other judicial proceeding when he made the statements.

### D. *Personal Involvement*

■■■ Defendant Kelz argues that he should be dismissed from this case because he was not plaintiff's employer and did not participate in the decision not to renew plaintiff's contract. Liability under § 1983 must be based on a defendant's personal involvement in the constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995); *Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir.1994); *Morales v. Cadena*, 825 F.2d 1095, 1101 (7th Cir. 1987); *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983). "A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Wolf–Lillie*, 699 F.2d at 869. However, it is not necessary that a defendant participate directly in the deprivation. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir.1985). As plaintiff notes, "[t]he requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or should

reasonably have known would cause others to deprive the plaintiff of [his] constitutional rights." *Conner v. Reinhard,* 847 F.2d 384, 396–97 (7th Cir.1988).

In *Conner,* one of the defendants (Zopler), a member of the city ethics board, demanded that the plaintiff's supervisor, the city's comptroller, fire the plaintiff, a stenographer in the comptroller's office, for certain comments she made at a board of ethics meeting. Zopler threatened to have plaintiff's position eliminated if she was not terminated; the plaintiff's supervisor subsequently terminated the plaintiff. The court held that Zopler was not entitled to summary judgment because a jury could conclude that it was Zopler's pressure that caused plaintiff's termination. In reaching the conclusion that an individual could be held liable for acting in ways that he "knew or should reasonably have known" would cause a constitutional deprivation, the court discussed and relied on two cases: *Miller v. City of Mission, Kansas,* 705 F.2d 368, 376 (10th Cir.1983), and *Soderbeck v. Burnett County, Wisconsin,* 752 F.2d 285, 294 (7th Cir.1985).

In *Miller,* 705 F.2d 368, members of the city council were held liable in a § 1983 action for an allegedly illegal firing, despite the fact that the mayor had sole discretion to make termination decisions. The mayor had been under the false impression that only the council was authorized to terminate the plaintiff and accordingly, sought council approval before acting. At the council meeting before the vote, the mayor stated that he could not terminate the plaintiff without council approval. Thus, each council member was notified that the mayor would not terminate the employee if the council did not give its consent and that the termination was essentially certain if the council did approve it. The court found that ample evidence existed to support "the jury's inference that the mayor

would not have dismissed Miller without a hearing absent the support and encouragement of defendant council members." *Id.* at 376.

In *Soderbeck,* 752 F.2d 285, the court concluded that although a county law enforcement committee was not empowered to fire employees in the sheriff's department, its members could be held liable if they participated in the sheriff's decision to terminate the plaintiff. The evidence showed that the committee had hired the plaintiff, had been involved in other disciplinary matters in the sheriff's department, met regularly with the sheriff (the sheriff had testified that he reported to the committee) and "may actually have approved rather than merely have refused to annul the [termination]." *Id.* at 294. The court reasoned that a jury could find that the committee had effectively ratified the termination and that this would satisfy the personal involvement component. In reaching this conclusion, the court made clear that "passively refusing to intervene" is insufficient. *Id.* In addition, it also noted that an individual council member could not be held liable for communicating the sheriff's termination decision to the plaintiff unless he advised the sheriff to make it or expressed approval of the decision. *Id.* at 293.

■ Plaintiff contends that defendant Kelz persuaded the village board to refuse to renew plaintiff's contract through his numerous negative and false public comments concerning plaintiff's honesty, reliability, and ability to do his job. A jury could reasonably infer from Kelz's public statements about not prosecuting cases investigated by plaintiff that defendant "set in motion a series of events that the defendant knew or should reasonably have known would cause [the board] to deprive the plaintiff of his constitutional rights." *Conner,* 847 F.2d at 396–97. Also, the

jury could infer that defendant Kelz knew that the village would not provide plaintiff with a hearing after defendant Kelz made his statements and that, as a result, the board's actions would violate plaintiff's constitutional right to due process. Drawing inferences in plaintiff's favor, it is possible that he will be able to prove that defendant Kelz was personally involved in the violation of his rights. The fact that defendant Kelz was not plaintiff's employer does not end the personal involvement inquiry.

### E. Statements to Prospective Employers

Defendant Kelz argues that the statements he made to plaintiff's prospective employers were not incident to termination. Relying on Siegert, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), defendant argues that a due process claim exists only where defamatory statements are made incident to the termination of a plaintiff's employment. Id. at 234, 111 S.Ct. 1789. Siegert was a psychologist who agreed to resign from his position at a federal mental health facility in order to avoid being fired. Id. at 228, 111 S.Ct. 1789. Later, he began working at an army hospital. When the hospital contacted the federal facility for information about Siegert's work performance, his superior at the federal facility described him as unethical and untrustworthy. As a result, Siegert was not authorized to work at the army hospital. Id. The Supreme Court held that Siegert had not stated a due process claim because he had resigned voluntarily and because the defamatory statements were made weeks after his resignation and thus, were not "incident to the termination." Id. at 234, 111 S.Ct. 1789.

▊ Without a connection between plaintiff's termination and defendant Kelz's statements to plaintiff's prospective employers, the statements do not support a viable constitutional claim. However, plaintiff alleges that "Kelz has made numerous negative and false comments [ ]to prospective employers [concerning] Hoffman's ability to do his job, honesty and reliability in connection with Hoffman's termination from Rib Lake." (Emphasis added.) Second Am. Cpt., dkt. # 16, at ¶ 15. This allegation suggests a nexus between defendant Kelz's statements to plaintiff's prospective employers and plaintiff's termination. As a result, plaintiff has alleged sufficient connection at this point in the proceedings to survive defendant Kelz's motion to dismiss.

### F. Qualified Immunity

▊ Finally, defendant Kelz argues that he is entitled to qualified immunity. When government officials perform discretionary functions, they are entitled to a qualified immunity defense that shields them from damages liability as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Behrens v. Pelletier, 516 U.S. 299, 305–06, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity represents an accommodation of the conflicting concerns of (1) providing remedies for persons injured as a result of a public official's abuse of his office, thus enforcing constitutional guarantees; and (2) insuring that "fear of personal monetary liability and harassing litigation" does not unduly inhibit officials in carrying out their duties. Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Once a defendant raises qualified immunity as a defense, the plaintiff bears the burden of proof. Erwin v. Daley, 92 F.3d 521, 525 (7th Cir.1996) (citing Anderson, 483 U.S. at 639, 107 S.Ct. 3034).

■ The Supreme Court has set forth the proper sequence for determining whether qualified immunity exists. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citing *Siegert*, 500 U.S. at 232, 111 S.Ct. 1789). First, a court must determine whether the alleged facts show that the defendant's conduct violated a constitutional right. *Id.* I have determined that the alleged facts suggest that defendant Kelz's conduct may have violated plaintiff's rights under the due process clause. Next, the court is required to determine whether the right in question was clearly established at the time of the alleged violation. *Id.* In other words, the court must determine "whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Id.* at 194–95, 121 S.Ct. 2151.

■ The qualified immunity inquiry must be based on the specific facts alleged in plaintiff's complaint. *McMath v. City of Gary, Indiana*, 976 F.2d 1026, 1031 (7th Cir.1992) ("Although raising qualified immunity in a motion to dismiss—rather than in the more typical vehicle, a summary judgment motion, which has the benefit of additional factual development—is permissible, it means that the only facts before [this court] in ruling on the motion are those in the complaint."). *See also Saucier*, 533 U.S. at 201, 121 S.Ct. 2151 (inquiry should be fact-driven, "undertaken in light of the specific context of the case, not as a broad general proposition"); *Colaizzi*, 812 F.2d at 308 ("[T]he test for immunity should be whether the law was clear in relation to the specific facts confronting the public official when he acted.").

■ In determining whether the constitutional right was clearly established, it is necessary to examine controlling precedents from the Supreme Court and the Court of Appeals for the Seventh Circuit at the time of the conduct in question.

*Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir.2000). Defendant Kelz argues that it was not clearly established in December of 2003 that his actions would violate plaintiff's constitutional rights, noting in his reply brief that plaintiff failed to cite closely analogous cases that would clearly establish his constitutional rights. However, a plaintiff need not always identify a closely analogous case. *Brokaw v. Mercer*, 235 F.3d 1000, 1022 (7th Cir.2000) (plaintiff "can establish a clearly established constitutional right by showing that the violation was so obvious that a reasonable person would have known of the unconstitutionality of the conduct at issue"). *See also Lunini v. Grayeb*, 395 F.3d 761, 772 (7th Cir.2005) (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 456 (7th Cir.1996) (" 'liability is not predicated upon the existence of a prior case that is directly on point' ")). What is important is that "[t]he contours of the right [at issue] be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 200–01, 121 S.Ct. 2151.

■ In *McMath*, 976 F.2d at 1031, the Court of Appeals for the Seventh Circuit held that as of "1988, it was clearly established that when the government terminates a public employee and makes false or substantially inaccurate public charges or statements that stigmatize the employee, that employee's liberty interest is implicated." *See also Munson v. Friske*, 754 F.2d 683, 693 (7th Cir.1985); *Perry v. F.B.I.*, 781 F.2d 1294, 1300 (7th Cir.1986); *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir.1986); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1138–39 (7th Cir.1984) (finding deprivation of liberty when employee was fired for publicly announced reason that impugned his moral character and that deprivation required due process protection). Further, because

plaintiff alleges in the second amended complaint that defendant Village of Rib Lake failed to rehire plaintiff "in conjunction with publicly communicated, false statements" that plaintiff was dishonest and unreliable, "it properly sets out a violation of [plaintiff's] clearly established right to a name clearing hearing." *McMath*, 976 F.2d at 1032. Accordingly, I conclude that defendant Kelz is not entitled to qualified immunity.

## ORDER

IT IS ORDERED that the motion to dismiss filed by defendant Karl Kelz is DENIED.